C. R. HAFLING, Ronald M. Henry, and Morgan Reed, as members of the Alaska State Personnel Board and the Alaska State Labor Relations Agency, Appellants,

v.

INLANDBOATMEN'S UNION OF the PACIFIC, Appellee.

No. 3438.

Supreme Court of Alaska.

Oct. 6, 1978.

G. Thomas Koester, Asst. Atty. Gen., and Avrum M. Gross, Atty. Gen., Juneau, for appellants.

Theresa L. Bannister, Juneau, for appellee.

J. Markham, Marshall, Preston, Thorgrimson, Ellis, Holman & Fletcher, Seattle, Wash., and Kermit E. Barker, Jr., Ruskin, Barker & Hicks, Anchorage, for amicus curiae National Marine Engineers Beneficial Association.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

CONNOR, Justice.

The issue presented by this appeal is whether the Public Employment Relations Act (hereinafter PERA), AS 23.40.070 *et seq.*, applies to employees of the State Division of Marine Transportation.[1] We hold that it does.

In 1962, AS 23.40.040 was enacted as part of Chapter 40 (Labor Organizations), Article 1 (Local Organizations and Ferry System Employees), authorizing the commissioner of public works to engage in collective bargaining with ferry system employees.[2] Pursuant to this authorization, the commissioner of public works and the Inlandboatmen's Union of the Pacific (hereinafter IBU) have successfully reached collective bargaining agreements over the years. PERA was enacted in 1972, as Article 2 of Chapter 40, to give all public employees the right to organize and bargain collectively with their public employers. At the same time, the legislature repealed one section of Article 1, but left other provisions of Article 1, such as AS 23.40.040, intact.[3]

On February 24, 1976, the Alaska Labor Relations Agency (hereinafter Agency) is-

1. Both parties and the superior court characterized the issue as whether PERA applied to the employees of the ferry system represented by appellee Inlandboatmen's Union of the Pacific. The National Marine Engineers Beneficial Association has asked in its amicus curiae brief that the issue include all crew members rather than just those represented by one union.

2. AS 23.40.040 states:
   *Collective bargaining agreement.* The commissioner of public works or his authorized representative, in accordance with §§ 10–30 of this chapter, may negotiate and enter into collective bargaining agreements concerning wages, hours, working conditions, and other employment benefits with the employees of the division of marine transportation engaged in operating the state ferry system as masters or members of the crews of vessels or their bargaining agent. No collective bargaining agreement is final without the concurrence of the commissioner of public works.
   The commissioner of public works may make provision in the collective bargaining agreement for the settlement of labor disputes by arbitration.

3. The section repealed in 1972 was AS 23.40.-010 which read:
   *Union contracts with state and political subdivisions.*
   (a) The state or a political subdivision of the state, including but not limited to an organized borough, municipal corporation, independent school district, incorporated school district, and public utility district, may enter into a contract with a labor organization whose members furnish services to the state or the political subdivision.

sued an order stating that ferry system employees were governed by PERA and classifying members of the IBU for purposes of the arbitration provisions of PERA. AS 23.40.200. IBU sought injunctive and declaratory relief in the superior court. Based upon stipulations regarding the facts and issues of the action, both IBU and the state moved for summary judgment.

The superior court granted IBU's motion and permanently enjoined the Agency from taking any action with respect to IBU or ferry personnel represented by IBU. The superior court reasoned that since AS 23.-40.040 had authorized collective bargaining by ferry employees nine years before PERA was enacted, the only way to find that PERA now applied to ferry system employees would be to find an implied repeal of AS 23.40.040. Relying upon *Peter v. State*, 531 P.2d 1263 (Alaska 1975), the court held that there could be no implied repeal unless the statutes in question were found to have irreconcilable purposes. After finding that "there is no irreconcilability of purpose between AS 23.40.040, and the system of collective bargaining which was well developed under it before 1972, and the Public Employment Relations Act," the court concluded that AS 23.40.040 exclusively governs collective bargaining by ferry system personnel. The state appeals from this decision.

### I.

Initially, the state argues that PERA clearly and unambiguously applies to ferry system personnel. AS 23.40.250(5) defines public employee as any employee of a public employer except elected or appointed officials or teachers or noncertified employees of school districts.[4] AS 23.40.250(6) defines public employer as "the state or a political subdivision . . . or other authority established by law, and a person designated by the public employer to act in its interest in dealing with public employees."[5] Ferry personnel are, therefore, public employees of a public employer and are not included within any of the itemized exceptions.

■ The state recites the rule than an unambiguous statute should be enforced as it reads without judicial modification or construction. *Application of Babcock*, 387 P.2d 694, 696 n.6 (Alaska 1963); *Alaska Mines & Minerals, Inc. v. Alaska Industrial Board*, 354 P.2d 376, 379 (Alaska 1960); 2A Sutherland, *Statutes and Statutory Construction*, § 45.02, at 4–5 (4th ed. Sands 1973). However, the rule is inapplicable where the seemingly unambiguous statute is possibly restricted by another act or where it must be considered *in pari materia* with another act. 2A Sutherland, *supra* § 46.01, at 49.

■ An ambiguity does appear here. Although ferry employees are public employees within the purview of PERA, there is another statute explicitly governing collective bargaining for ferry personnel. Therefore, the "plain meaning rule" cannot be used and we must construe the two statutes.[6]

(b) Nothing contained in this chapter requires the state or political subdivision of the state to enter into a union contract. (§ 1 ch. 108 SLA 1959). Repealed by § 5 ch. 113 SLA 1972.
Other sections of Article 1, AS 23.40.045 through AS 23.40.060, not pertinent to the issue before us, were repealed by § 55 ch. 69 SLA 1970.

4. AS 23.40.250(5) reads in full:
(5) "public employee" means any employee of a public employer, whether or not in the classified service of the public employer, except elected or appointed officials or teachers or noncertificated employees of school districts;

5. AS 23.40.250(6) states in full:
(6) "public employer" means the state or a political subdivision of the state, including without limitation, a town, city, borough, district, board of regents, public and quasi-public corporation, housing authority or other authority established by law, and a person designated by the public employer to act in its interest in dealing with public employees;
[.]

6. The state contends that the Agency's order that PERA covered ferry system employees

## II.

In order to interpret the statutes at issue, we must first look to what the legislature intended when it enacted PERA. *Peter v. State*, 531 P.2d 1263, 1268 (Alaska 1975).

The state argues that the legislature intended to establish a comprehensive scheme of collective bargaining for all public employees, including ferry workers. Since AS 23.40.040 merely authorized collective bargaining without further content, PERA now provides legislative guidance in both collective bargaining procedures and in the protection of certain policies fostered by PERA. IBU and amicus contend that ferry personnel are unique and, consequently, the legislature intended to treat them separately.

PERA's policy statement, AS 23.40.070, declares the public policy of the state to be "to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government."[7] To effectuate this policy,

should be upheld under a reasonable basis test. IBU asserts that the issue is one of statutory construction and, therefore, subject to independent judicial review. Because we do not agree with the state on this point, we do not find this argument dispositive as the state avers.

In *Union Oil Co. v. Department of Revenue*, 560 P.2d 21 (Alaska 1977), we set out the test for the standard of judicial review of an administrative agency action.

"Where the agency decision involves the formulation of fundamental policy or the particularized expertise and experience of administrative personnel, this court will defer to the administrative decision, inquiring only whether it has a reasonable basis. On the other hand, where, as here, the issues to be resolved turn on statutory interpretation, the knowledge and expertise of the agency is not conclusive of the intent of the legislature in passing a statute. Statutory interpretation is within the scope of the court's special competency, and it is our duty to consider the statute independently." (footnotes and citations omitted)

560 P.2d at 23. The state relies upon *City of Milwaukee v. Wis. Employment Rel. Comm'n*, 71 Wis.2d 79, 239 N.W.2d 63 (1976), to show that the Agency's determination was one of fundamental policy rather than statutory construction. The issue in that case was whether assistant city attorneys were municipal employees for the purposes of the Wisconsin Public Employment collective bargaining statute, as the Wisconsin agency had determined. However, city attorneys were not covered by another statute as are ferry personnel here. Furthermore, the court there held that although the agency action would have "great bearing" on the court's construction of the statute, the issue was basically one of statutory construction and subject to independent review. 239 N.W.2d at 66.

Resolution of the issue presented here is not one that would require any particular expertise, such that the court would be ill-equipped to properly determine the case. *See Jager v. State*, 537 P.2d 1100, 1107 (Alaska 1975); *Kelly v. Zamarello*, 486 P.2d 906, 916–17 (Alaska 1971). Rather, it is a question of how the two statutes in issue relate to each other, and whether the Agency would have jurisdiction over ferry personnel at all. Therefore, determination of this issue is within the special competency of the court, and the court is not bound by the Agency's determination. *See State v. Aleut Corp.*, 541 P.2d 730, 736–37 (Alaska 1975). *See also Order of Railway Conductors of America v. Swan*, 329 U.S. 520, 524–25, 67 S.Ct. 405, 407, 91 L.Ed. 471, 476 (1947).

7. AS 23.40.070 states in full:

*Declaration of policy.* The legislature finds that joint decision-making is the modern way of administering government. If public employees have been granted the right to share in the decision-making process affecting wages and working conditions, they have become more responsive and better able to exchange ideas and information on operations with their administrators. Accordingly, government is made more effective. The legislature further finds that the enactment of positive legislation establishing guidelines for public employment relations is the best way to harness and direct the energies of public employees eager to have a voice in determining their conditions of work, to provide a rational method for dealing with disputes and work stoppages, to strengthen the merit principle where civil service is in effect and to maintain a favorable political and social environment. The legislature declares that it is the public policy of the state to promote harmonious and cooperative relations between government and its employees and to protect the public by assuring effective and orderly operations of government. These policies are to be effectuated by

(1) recognizing the right of public employees to organize for the purpose of collective bargaining;

(2) requiring public employers to negotiate with and enter into written agreements with employee organizations on matters of wages, hours, and other terms and conditions of employment;

(3) maintaining merit-system principles among public employees.

the legislature in AS 23.40.070 recognized the right of public employees to organize and engage in collective bargaining; required public employers to negotiate and enter into formal agreements with employees; and mandated that merit-system principles be maintained. IBU asserts that of these goals, the first and second are unnecessary for ferry employees because of the special early recognition given to the collective bargaining needs of the ferry crews and the evolution of a workable collective bargaining system. IBU argues that because ferry employees are not subject to the state personnel system and use seniority rather than merit-system principles, the third policy effectuation also does not pertain to ferry employees and, therefore, the legislature did not intend to encompass them within PERA.

The legislative history of PERA reveals nothing concerning the intended coverage of ferry personnel. However, in 1977, the legislature amended one PERA provision, AS 23.40.210, to require employers to include in their formal agreements a pay plan for cost-of-living differentials between employees residing within the state and those residing outside the state.[8] The Finance Committee Chairman in a letter of intent accompanying the bill to amend the statute wrote:

"It is the intent of the House Finance Committee . . . to provide for a cost-of-living pay differential between Alaska Marine Highway employees who live in Alaska and those who live outside the state."

Proposed Amendment to AS 23.40.210; HB 203, 1977 House Journal, at 461 (statement of Steve Cowper).[9] It appears, therefore, that the legislature assumed ferry employees were within the ambit of PERA.[10]

In ascertaining the legislative intent underlying PERA, it is helpful to examine the PERA provisions which depict certain policies the legislature considered important to safeguard in public employee collective bargaining. AS 23.40.100 provides for representative elections and protects minority interests within a proposed bargaining unit. AS 23.40.110 specifically catalogs unfair labor practices beyond specific violations of agreements. The Agency is authorized to investigate complaints and attempt informal conciliation with the proviso that nothing said during the course of such procedure can be used against either side. AS 23.40.-120. PERA also provides for formal administrative proceedings before an expert agency for findings of fact before arbitration becomes necessary. AS 23.40.130–.160. AS

---

8. AS 23.40.210, as amended, provides:

*Agreement.* Upon the completion of negotiations between an organization and a public employer, if a settlement is reached, the employer shall reduce it to writing in the form of an agreement. The agreement may include a term for which it will remain in effect, not to exceed three years. The agreement shall include a pay plan designed to provide for a cost-of-living differential between the salaries paid employees residing in the state and employees residing outside the state. The plan shall provide that the salaries paid, as of August 26, 1977, to employees residing outside the state shall remain unchanged until the difference between those salaries and the salaries paid employees residing in the state reflects the difference between the cost of living in Alaska and living in Seattle, Washington. The agreement shall include a grievance procedure which shall have binding arbitration as its final step. Either party to the agreement has a right of action to enforce the agreement by petition to the labor relations agency.

9. This letter also weakens the argument made by amicus that ferry personnel must be treated separately because they must reside at the employer's premises. The legislature has recognized and provided for this distinction within the scope of PERA. AS 23.40.210.

10. The amendment to AS 23.40.210 became effective on August 26, 1977. Thus, the trial judge, who granted the summary judgment on April 5, 1977, had no opportunity to consider this indication of legislative intent. Nevertheless, subsequent legislation is entitled to "significant weight" in declaring the intent of an earlier statute. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134, 143 (1973); see *Sioux Tribe of Indians v. United States,* 316 U.S. 317, 329–30, 62 S.Ct. 1095, 1100–01, 86 L.Ed. 1501, 1509 (1942). Legislative reports on proposed amendments are also "persuasive authority" in interpreting an earlier enacted statute. *Talley v. Matthews,* 550 F.2d 911, 920 (4th Cir. 1977).

23.40.225 allows an employee whose religious beliefs prevent him from joining a union to pay an amount equivalent to union dues to a charity chosen by the union. In addition, the legislature, cognizant of the public's interest in the public employee collective bargaining process, classified public employees for purposes of the right to strike and required that the monetary terms of an agreement were subject to funding through legislative appropriation. AS 23.40.200; AS 23.40.215. And finally, to ensure compliance with PERA, the legislature provided that violation of an agency order would be a misdemeanor. AS 23.40.-180. We note that none of the policies expressed by these PERA provisions are reflected in the latest agreement in the record that had been reached under AS 23.40.040.[11]

### III.

Bearing in mind these illustrations of the legislature's intent in enacting PERA and the principle that

"[w]here a reasonable construction of a statute can be adopted which realizes the legislative intent and avoids conflict or inconsistency with another statute this should be done" (footnote omitted) [12]

We now turn to the various rules of statutory construction.

■ The general rule is that exceptions to the operation of a statute are not to be implied, particularly where there is an ex-press exception clause. *In re Monk's Club, Inc.*, 64 Wash.2d 845, 394 P.2d 804, 807 (1964); 2A Sutherland, *supra*, § 47.11 at 90; *See also Application of Babcock*, 387 P.2d 694 (Alaska 1963). IBU contends, however, that the legislative and operational history of AS 23.40.040 implies that the legislature intended it to be an exception to PERA. The state argues that since the legislature knew of the operational history of AS 23.-40.040 and specifically chose not to exempt ferry employees in AS 23.40.250(5),[13] no exception should be implied.[14]

■ It is true that ferry workers are exempted from the State Personnel Act,[15] the Public Employees Retirement System,[16] and from the statutory leave provisions for state employees.[17] Many other public employees are also wholly or partially exempted from these acts—far more than are exempted from PERA. All three acts exempt employees of the Division of Marine Transportation who are covered by collective bargaining agreements as provided for in AS 23.40.040.[18] The thrust of the exemptions is to provide for those public employees who are not susceptible to ordinary recruiting and examining procedures. *See* AS 39.25.-130. Since ferry crew members have more specialized skills, they are not readily tested uniformly with other public employees. Therefore, the state authorized them in AS 23.40.040 to make their own contractual relationships with their employer. Since AS 23.40.250(3)[19] defines "labor relations agen-

---

**11.** Rule 14 of the 1973–75 agreement does provide for a three day conciliation attempt before arbitration, but it has none of the investigatory nor protective provisions that accrue to the informal pre-arbitration hearing in AS 23.40.-130–.160.

**12.** *Gordon v. Burgess Construction Co.*, 425 P.2d 602, 604 (Alaska 1967).

**13.** See footnote 4 *supra*.

**14.** The state relies upon *State v. City of Petersburg*, 538 P.2d 263 (Alaska 1975), for the proposition that exemptions to PERA are disfavored. *Petersburg* concerned a municipality's decision to exempt itself from PERA after it was aware that organizational activity had taken place. We held that the rejection of PERA, well after union organization, impermissibly interfered with the employee's right to choose a collective bargaining association. That holding differs from the right of a particular employee group to claim it is exempt from PERA.

**15.** AS 39.25.110(12).

**16.** AS 39.35.680(5)(C)(iv).

**17.** AS 39.20.310(8).

**18.** The exception from the retirement system more particularly states ferry employees "who are covered by a union or group retirement system to which the state makes contributions." AS 39.35.680(5)(C)(iv).

**19.** AS 23.40.250(3) provides:
   (3) "labor relations agency" means the state personnel board with regard to the state and

cy" (which supervises and enforces PERA) as the state personnel board for state employees, and the Department of Labor with regard to all other public employees, the state personnel board would be the applicable regulatory agency here. Therefore, there is no inconsistency in the ferry crew exemption from the state personnel system and its inclusion with PERA. Had the legislature intended to exempt the ferry workers from PERA, it could easily have included a similar express exemption. Moreover, we do not have any other conflict between the state personnel acts' exemptions and the PERA regulations setting forth the procedure to be followed in arriving at agreements authorized by AS 23.40.040 which might indicate that the legislature meant to also exempt ferry crews from PERA.

Additionally, we find that the operational history of AS 23.40.040 does not indicate that the legislature intended ferry personnel to be excluded from PERA's coverage. AS 23.40.040 states that the commissioner of public works may negotiate and enter into agreements. He is not required to do so. PERA does require public employers to negotiate. AS 23.40.070(2); AS 23.40.110. Although successful agreements have been worked out under AS 23.40.040, there is no assurance that the system will continue to work. It is preferable then to have any future problems controlled by the same general mechanism that governs collective bargaining agreements by other public employees.

■ AS 23.40.240 provides that nothing in PERA terminates or modifies an existing collective bargaining agreement, so application of PERA would not necessarily undo nine years of a workable system. IBU argues that this section reflects the legislature's intention to exclude ferry personnel since they were the only public employees then engaging in collective bargaining. However, a more reasonable construction is that the legislature intended that PERA incorporate existing collective bargaining agreements rather than exempt them.

Even if there were public policy justifications for special treatment of ferry personnel in 1962 when AS 23.40.040 was enacted, those reasons are no longer pertinent today. The most reasonable construction, consistent with the implied exception rule, is that the legislature was aware of AS 23.40.040 and saw no inconsistency in enacting PERA to provide guidelines and procedures for public employee collective bargaining. PERA does nothing to undercut the AS 23.40.040 authorization of collective bargaining. Rather, it gives it additional content. Therefore, the rule that an exception clause comprises the only limitation on the operation of a statute should be applied, and AS 23.40.040 cannot be read as an implied exception to PERA.

■ We agree with the trial court that AS 23.40.040 was not repealed by implication by the enactment of PERA.[20] However, it does not necessarily follow that just because AS 23.40.040 is still intact, the additional statutory provisions of PERA do not

employees of the state, and means the Department of Labor with regard to all other public employees and all other public employers;

**20.** The rule for repeals by implication in Alaska is:

"We shall look to the purpose indicated by the legislature in passage of an act in our effort to determine whether the new enactment is intended to repeal a prior one. If enforcement of the prior statute is in irreconcilable conflict with such purpose, it will be held to have been impliedly repealed."

*Peter v. State*, 531 P.2d 1263, 1268 (Alaska 1975). The court also noted that "if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will

operate similarly as a repeal of the earlier act." *Id.* at 1267, *quoting Posadas v. National City Bank,* 296 U.S. 497, 503, 56 S.Ct. 349, 352, 80 L.Ed. 351, 355 (1936). *See also People v. Gould,* 345 Ill. 288, 178 N.E. 133, 144 (1931). Legislative intent is the key and if the inconsistency between the two enactments is not fatal to the operation of either, the two may stand together and there will be no implied repeal. *Peter v. State, supra; Lilly v. Gladden,* 220 Or. 84, 348 P.2d 1 (1959); 1A J. Sutherland, Statutes and Statutory Construction §§ 23.09, 23.10, at 223–32 (4th ed. Sands 1973). Any possible conflict between AS 23.40.040 and PERA is neither severe nor irreconcilable, particularly in light of AS 23.40.240 which incorporates existing agreements.

apply to ferry personnel in the same manner as they apply to all other non-exempt public employees.

### IV.

■ Since AS 23.40.040 cannot be treated as an implied exception to PERA, and since PERA did not repeal AS 23.40.040 by implication, we will construe the statutes *in pari materia. See* 2A Sutherland, *supra* § 51.01, at 287–89. It is assumed that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter, and all should be construed together. *State v. Wright,* 84 Wash.2d 645, 529 P.2d 453 (1974).

"Prior statutes relating to the same subject matter are to be compared with the new provision; and if possible by reasonable construction, both are to be so construed that effect is given to every provision in all of them." (footnote omitted).

2A Sutherland, *supra* § 51.02, at 290. *See Arco Pipeline Co. v. 3.60 Acres, More or Less,* 539 P.2d 64, 69 (Alaska 1975); *Stewart & Grindle, Inc. v. State,* 524 P.2d 1242 (Alaska 1974); *Smalley v. Juneau Clinic Building Corp.,* 493 P.2d 1296 (Alaska 1972). It is with this goal in mind that we construe PERA and AS 23.40.040.

■ If there is no implied exemption for ferry personnel under PERA, it cannot be said that the two acts do not cover the same people. AS 23.40.040 is a subset of the broader PERA coverage and was likely left intact deliberately to designate the commissioner of public works·as the state's representative in bargaining with the ferry unions.[21] As to the purposes of the two acts, it is unclear how they could be construed as distinct. Both authorize collective bargaining. The difference is that PERA describes exactly how that bargaining should take place. IBU has not shown that ferry crews are sufficiently distinct from other public employees such that they should be given free rein in organizing and bargaining when other public employees are not so allowed.[22]

In *Gordon v. Burgess Construction Co.,* 425 P.2d 602 (Alaska 1967), we had to determine whether the scope of the employer coverage under the Defective Machinery Act was retained separately from the coverage provided by the later enacted Workmen's Compensation Act. We reasoned that when the Defective Machinery Act was enacted, its coverage was comprehensive, but it was reduced by the enactment of the compensation act and the various amendments extending that act's scope over the years.

"We do not adopt appellant's argument that the Alaska Legislature, by continuing the Defective Machinery Act in existence after enactment of the Workmen's

21. *See* AS 23.40.250(6), footnote 5, *supra,* which defines "public employer" to include "a person designated by the public employer to act in its interest in dealing with public employees."

22. IBU argues that a special act will be treated as an exception to a later enacted general act if the general act would have included the specific, if standing alone, and directs our attention to *Coleman v. United States,* 363 F.2d 190 (9th Cir. 1966), *rev'd* 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968) (general mining regulation for common stone v. special statute for building stone); *City of Billings v. Smith,* 158 Mont. 197, 490 P.2d 221 (1971) (Minimum Wage Act v. specific statute for wages of police and fireman); *Appleton v. Oregon Iron & Steel Co.,* 229 Or. 81, 358 P.2d 260 (1960) (general appeal statute of limitations v. specific statute of limitations for appeal from a water rights determination). 2A Sutherland, *supra* § 51.05, at 315.

All of these cases cited by IBU are distinguishable for two reasons. First, they all involved much clearer conflicts and very specific statutes. Here we have much less of a conflict because the legislature more likely saw PERA as an enhancement of its previous grant in AS 23.40.040, rather than a cutting back. Second, and more importantly, in all of the above cases, the special statute included all of the same factors as the general, plus something unique. That is not the case here where the general legislation, PERA, contains far more detailed provisions than AS 23.40.040. A special statute cannot supplant a general unless all of the elements of the general are also included in the special. *People v. Ruster,* 16 Cal.3d 690, 129 Cal.Rptr. 153, 548 P.2d 353 (1976) (prosecution under Penal Code for forgery or grand theft v. prosecution under the Unemployment Insurance Code for false statements in application for benefits).

Compensation Act, evidenced its intent to exclude defective, dangerous machinery from the coverage of the Compensation Act . . .."

425 P.2d at 605. Similarly, AS 23.40.040 was comprehensive when it was enacted, but it was further defined by PERA.

■ All statutes relating to the same subject matter should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one or the other. *Fuentes v. Workers' Compensation Appeals Board*, 16 Cal.3d 1, 128 Cal.Rptr. 673, 547 P.2d 449, 453 (1976); *State v. Wright, supra.* With this goal in mind, PERA and AS 23.40.040 can be effectively harmonized to further the legislative purpose of establishing uniform procedures for public employee collective bargaining and to protect the policies the legislature thought important in enacting PERA.

The judgment is REVERSED and RE-MANDED with instructions to enter summary judgment in favor of appellant.