**Norman N. CONNER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–574.**

Court of Appeals of Alaska.

March 8, 1985.

Janet L. Crepps, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

William Ingaldson, Asst. Dist. Atty., Victor C. Krumm, Dist. Atty., Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

On February 2, 1984, Norman N. Conner drove across the Carrs shopping center parking lot at Dimond Boulevard and the Old Seward Highway. Conner was contacted by Anchorage Police Officer Koch. Koch had a computer check run on Conner which revealed Conner's license had been suspended. Conner was charged with driving while license suspended in violation of AS 28.15.291.

Prior to trial, Conner moved to dismiss the charge, arguing "vehicular way," an element of AS 28.15.291(a), did not include a privately owned parking lot.[1] In the alternative, Conner requested a jury instruction which defined "vehicular way or area" as not including such a parking lot. District Court Judge James C. Hornaday determined that the question was one of law. He denied the motion to dismiss, ruling:

> "[P]rivate property" means private property where there is no public ingress or egress. I believe that the Carrs parking lot is clearly open to the public and the public is in essence invited to drive in and out of the Carrs parking lot.

Conner then entered a no contest plea to the charge pursuant to *Cooksey v. State*, 524 P.2d 1251, 1257 (Alaska 1974). He then stipulated that his license was suspended and he was aware of the suspension. Conner was subsequently sentenced to ten months in jail with all but 100 days suspended, a $1,000 fine, and a revocation of his operator's license for one year. Conner now appeals the trial court's decision. We reverse.

On appeal, Conner argues that the trial court erroneously construed AS 28.15.-291(a). He argues that the definition of "vehicular way or area" as defined in former AS 28.35.260(a)(18) specifically excludes "private property" such as a parking lot. He believes "private property" should be a question of ownership, not whether the public is given access to it with permission of the owner. He argues that a privately owned parking lot should fall within the definition of "private road or driveway" in 13 AAC 40.010(37) which defines such areas by ownership. Finally, he contends that the legislature made a distinction between the present offense and other driving offenses by prohibiting those offenses to occur anywhere, while specifically limiting AS 28.15.291 offenses to occur in certain areas. He argues that by allowing the trial court's decision to stand, this court would be eliminating a crucial legislative distinction.

The state argues the trial court's ruling should be affirmed. It disagrees with Conner that 13 AAC 40.010(37) should have application to an interpretation of former AS 28.35.260(a)(18) because the code section applies to "roads or driveways" and not "property." The state argues that common sense dictates that the legislature would not have intended to exclude large privately-owned parking lots from the statute's scope. It points out that drivers who have had their licenses suspended have proven themselves to be poor drivers and that the public should be protected from such drivers, particularly in large shopping center parking lots which are congested and hazardous. Finally, the state argues that the language in question is intended to exclude areas which are not so publicly used.

Although we appreciate the state's concerns, in this particular situation, we find Conner's argument more persuasive. The parking lot in question is owned and main-

---

1. AS 28.15.291 provides in part:

   *Driving while license canceled, suspended, revoked or in violation of limitation.* (a) A person may not drive a motor vehicle on a highway or *vehicular way or area* at a time when that person's driver's license, or privi-

   lege to drive has been canceled, suspended or revoked in this or another jurisdiction, or when driving in violation of a limitation placed upon that person's license or privilege to drive in this or another jurisdiction. [Emphasis provided.]

tained by the proprietors of the stores which the lot surrounds. The lot is open to the public from 7:00 a.m. to 11:00 p.m., and signs to this effect are posted in the lot. The lot contains 700 to 1,000 spaces and has five separate entrances connecting it to Dimond Boulevard and the Old Seward Highway. Apparently the area is, at times, patrolled by city police officers. The particular question before us is whether such a parking lot is a "vehicular way or area" within the meaning of AS 28.15.291.

Former Alaska Statute 28.35.260 provides:

> *Definitions; regulations.* (a) Unless otherwise specifically defined or unless the context otherwise requires, in this title, and in regulations adopted under this title
>
> .     .     .     .     .
>
> (18) "vehicular way or area" means a way, path or area, *other than* a highway or *private property*, which is designated by official traffic control devices or customary usage and which is open to the public for purposes of pedestrian or vehicular travel, and which way or area may be restricted in use to pedestrians, bicycles, or other specific types of vehicles as determined by the department or other agency having jurisdiction over the way, path or area.[2] [Emphasis provided.]

And, 13 AAC 40.010 provides:

> *Definitions* ... in AS 28, unless otherwise provided
>
> .     .  .     .     .     .
>
> (37) "private road or driveway" means a way or *place in private ownership used for vehicular travel* by the owner or those having *express or implied permission* from the owner. [Emphasis provided.]

██ It is within the special competency of the appellate courts to independently interpret a statute. *See Wien Air Alaska, Inc. v. Department of Revenue, of State of Alaska,* 647 P.2d 1087 (Alaska 1982); *Francis v. Anchorage,* 641 P.2d 226 (Alaska App.1982). Generally, criminal statutes should be strictly construed. *State v. Rice,* 626 P.2d 104 (Alaska 1981). However, in *Belarde v. Anchorage,* 634 P.2d 567 (Alaska App.1981), we said:

> Strict construction does not require that statutes be given the narrowest meaning allowed by the language; rather, the language should be given "a reasonable or common sense construction, consonant with the objectives of the legislature."

*Id.* at 568, *citing* C. Sands, *Sutherland Statutory Construction,* § 59.06, at 18–19 (4th ed. 1974).

██ Because there is little legislative history from which to determine the objectives of the legislature, it makes sense for us to apply common sense to determine whether the Carrs parking lot is to be considered "private property" for purposes of former AS 28.35.260(a)(18) and AS 28.-15.291. All of the provisions above should be read together and Title 28 generally should be viewed as a whole.[3]

██ Applying these rules of statutory construction to the present provisions, we conclude the Carrs parking lot should not be considered a "vehicular way or area" for purposes of AS 28.15.291. We realize, as did Judge Hornaday, that the question is a close one. It appears to us that the Carrs parking lot is a "private road or driveway," as defined in 13 AAC 40.010(37) because it is a "way or place in private ownership used for vehicular travel by ... those having express or implied permission from the owner." The term "private property" in former 28.35.260(a)(18) is broader

---

**2.** Former AS 28.35.260(a)(18), in effect at the time of Conner's offense, has been superseded by AS 28.40.100(a)(19). We note that both statutes are identical.

**3.** Statutes relating to the same subject matter should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one provision over another. *Alaska Children's Services, Inc., v. Williamson,* 606 P.2d 786, 789 (Alaska 1980); *Hafling v. Inlandboatmen's Union of the Pacific,* 585 P.2d 870, 878 (Alaska 1978).

than "private road or driveway," but clearly includes the same. Common sense would also dictate that "private property" would be similarly defined by ownership. Thus, the result would be the same even if we were not to conclude the parking lot is a "private road or driveway" under 13 AAC 40.010(37).[4] *See, e.g., Scranton v. Wheeler,* 179 U.S. 141, 21 S.Ct. 48, 45 L.Ed. 126 (1899).

Conner's argument that the legislative distinction between infractions which can occur anywhere versus those which occur only in limited areas specified by statute has merit. Conner's argument comports with the rules of statutory construction set forth above. Principally, he relies on the distinction between AS 28.35.030, Alaska's DWI statute, and AS 28.15.291. AS 28.35.030 prohibits driving while intoxicated anywhere in the state.

Alaska Statute 28.15.291 seeks to penalize certain drivers whose license or privilege to drive a motor vehicle in certain areas has been canceled, suspended or revoked. *See Francis v. Anchorage,* 641 P.2d 226 (Alaska App.1982). The license or privilege which is the subject of AS 28.15.291 is explained in AS 28.15.011(b) which reads in pertinent part:

> (b) Every person exercising the person's privilege to drive, or exercising any degree of physical control of a motor vehicle upon a highway, vehicular way or area, *or other public property* in this state, is required to have in the possession of the person a valid Alaska driver's license issued under the provisions of this chapter for the type or class of vehicle driven, unless expressly exempted by law from this requirement. [Emphasis provided.]

It appears clear that the privilege to drive is upon "public property" and a "vehicular way" is considered public for purposes of exercising the privilege. The word "other" must be given effect. It defeats logic to suggest that the State of Alaska could grant Conner a privilege to drive on the

Carrs parking lot. The state can hardly "guarantee," as a "basic civil right," the right to drive on a private lot. *Francis v. State,* 641 P.2d at 227 n. 2.

Case law from other states seems to accord with this reasoning. In *State v. Haight,* 2 Conn.Cir. 79, 194 A.2d 718 (1963), the court said:

> The license, therefore, permits operation upon the public highway; accordingly, a suspension of a license suspends the permission of a person to operate on a public highway. Conversely, since the defendant was not licensed to drive on private property, the suspension of his license would not affect his right to drive on private property.

*Id.* 194 A.2d at 719. Haight was driving on a private parking lot adjacent to a restaurant when he was cited for driving with his license suspended. *See also generally* Annot., 29 A.L.R.3d 938 (1970 & Supp.1984).

There is a distinction in objectives served by a license suspension statute and a DWI statute. The suspension statute serves to revoke the right to exercise a privilege, whereas the primary objective of a DWI statute is to protect "the public from injury to person or property by persons operating ... motor vehicles while under the influence of intoxicating liquor[s]." *State v. Bromley,* 117 Vt. 228, 88 A.2d 833, 835 (1952); *accord State v. Sisti,* 62 N.J.Super. 84, 162 A.2d 297, 298 (1960).

Based upon our independent interpretation of AS 28.15.291, we conclude the trial court erred and Conner's conviction and sentence must be REVERSED.

---

**4.** We note that this reading is consistent with the language in former AS 28.35.260(a)(18) which requires the state to have "jurisdiction over the way, path or area."