STATE of Alaska, Appellant,

v.

Wesley J. JONES and Patricia J. Jones, Appellees.

No. A–1804.

Court of Appeals of Alaska.

Feb. 26, 1988.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, An-

chorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellant.

Donald M. Johnson, Anchorage, for appellees.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Patricia J. Jones and Wesley J. Jones were indicted on September 5, 1986, for interference with official proceedings under AS 11.56.510(a)(1). The Joneses moved to dismiss the indictment for failure to properly instruct the grand jury on the applicable law and for prosecutorial vindictiveness. Acting Superior Court Judge William H. Fuld found that the conduct of the prosecutor was not vindictive and did not justify dismissal. However, Judge Fuld did find that the state improperly instructed the grand jury, and he dismissed the indictment. The state appeals. We affirm.

The facts in this case are undisputed. Wesley and Patricia Jones have a daughter, M.J. Wesley Jones has a brother named Michael Jones. Michael Jones was married to Jackie Jones; they are now divorced. They have a daughter, T.J. M.J. was eight years old at the time of the offense involved in this case; T.J. was twelve.

On July 9, 1985, Michael Jones became the subject of an investigation involving his alleged touching of his daughter, T.J., and his niece, M.J. Officer S. Anne Newell of the Anchorage Police Department conducted the investigation. She explained the criminal process to Patricia Jones and told her that the testimony of T.J. and M.J. would be needed at trial and probably also before the grand jury. Newell had a similar conversation with Jackie Jones, T.J.'s mother, with whom T.J. lived. On February 18, 1986, Michael Jones was arrested in Anchorage for sexually abusing T.J. and M.J. A grand jury hearing was set for March 27, 1986, and trial for June 10, 1986.

On February 23, 1986, Wesley and Patricia purchased airline tickets for Patricia and the two girls to fly to Phoenix, Arizona. Patricia and the two girls left in the early morning hours of February 25. Wesley drove them to the airport. The first M.J. knew of the trip was when she was awakened in the early hours of the morning and told that she was leaving at once. T.J. also did not learn of the trip until the day they left or the day before. It is undisputed that Jackie Jones had participated in and approved of the plan for her daughter to leave the state with Patricia.

About two weeks after M.J. and T.J. were taken to Arizona, subpoenas were issued for the first time for them to appear as witnesses at Michael Jones' grand jury hearing. Officer Newell attempted to serve the subpoenas but was unable to locate either the girls or Wesley and Patricia Jones. T.J. apparently returned to Anchorage sometime in early June of 1986. Patricia Jones and M.J. returned on June 21. Neither T.J. nor M.J. testified at Michael Jones' grand jury proceeding or at his trial.

Based on their removal of M.J. and T.J. from Alaska, Wesley and Patricia Jones were charged with interfering with official proceedings. In moving to dismiss the charges, the Joneses acknowledged that their purpose in taking M.J. and T.J. to Arizona was to avoid having the girls testify against Michael Jones. They nevertheless contended that the interference with official proceedings statute was inapplicable to their case.

The issue we must decide is whether the grand jury in this case was properly instructed on the meaning of AS 11.56.-510(a)(1)—the statute prohibiting interference with official proceedings. That statute provides, in pertinent part:

(a) A person commits the crime of interference with official proceedings if the person

(1) uses force on anyone, damages the property of anyone, or threatens anyone with intent to

(A) improperly influence a witness or otherwise influence the testimony of a witness;

. . . .

(D) otherwise affect the outcome of an official proceeding....

This statute is aimed at precluding persons from attempting to influence witnesses or affect the outcome of official proceedings by the use of force or threats. "Witness" is defined under AS 11.56.900(6) to include "a witness summoned or appearing in an official proceeding" or "a person who the defendant believes may be called as a witness in an official proceeding, present or future." Under AS 11.56.900(1)(B), improperly influencing a witness is defined to include causing or inducing a witness to "avoid or attempt to avoid legal process summoning the witness to testify in an official proceeding, regardless of whether legal process has issued...." "Force" is defined in AS 11.81.900(b)(22) as "any bodily impact, restraint, or confinement or the threat of imminent bodily impact, restraint, or confinement...." The precise controversy in this case centers upon the question whether the Joneses used "force," as defined in this statute, when they traveled with M.J. and T.J. to Arizona.

The position taken by the Joneses is that the interference with official proceedings statute is meant only to prohibit force that is unlawful. The Joneses rely, *inter alia,* on AS 11.81.430(a)(1), which justifies the reasonable use of nondeadly force by parents and other persons exercising care and supervision over minor children:

(a) The use of force upon another person that would otherwise constitute an offense is justified under any of the following circumstances:

(1) When and to the extent reasonably necessary and appropriate to promote the welfare of the child or incompetent person, a parent, guardian, or other person entrusted with the care and supervision of a child under 18 years of age or an incompetent person may use reasonable and appropriate nondeadly force upon that child or incompetent person.

Here, the Joneses argue that, to the extent they used force, that force did not exceed in nature or extent the force that would ordinarily be justified under this provision.

The state does not dispute the assertion that the Joneses used only such force as a parent would ordinarily be privileged to use toward a child. The state also acknowledges that both M.J. and T.J. were minor children who were lawfully under the care and supervision of both Patricia and Wesley Jones when the Joneses took them to Arizona. It is the state's position, however, that the word "force," as used in the interference with official proceedings statutes, includes all force, even force otherwise qualifying as privileged under AS 11.81.430(a)(1). In keeping with this view, the state categorically instructed the grand jury that the Joneses could be deemed to have used "force" if the grand jury found them to have committed any act removing M.J. and T.J. from the state. The state informed the grand jury:

Force has a technical definition under the law. It means—it can include bodily impact which is your common definition of what an assault is. But it also includes restraint or confinement. And the dictionary definition of restraint also includes removal. So if you find some restraint or confinement of the children in that they were removed from the state that would be constituting force under the statute.

■ The Joneses contend that the state's position, as reflected in its instruction to the grand jury, constitutes a misapplication of the law. In dismissing the indictment, Judge Fuld agreed. The judge stated:

Any "force" that the parents used in this case so as to constitute restraint or confinement is the type of legal force that a parent exercises over a child in taking a child to school or taking a child on vacation or changing a child's place of domicile. The children may have been surprised to find out that they were going to Arizona and may not have wanted to go to Arizona and be taken out of school and away from their siblings, but it did not constitute ... illegal force.

Judge Fuld concluded that the prohibition against the use of force contained in the interference with official proceedings statute was directed at the use of unlawful

force and did not encompass force that would otherwise be legally justified. We agree.

▆▆▆▆ It is within the special competency of appellate courts to independently interpret a statute. *See Francis v. Anchorage,* 641 P.2d 226 (Alaska App.1982). Generally, criminal statutes should be strictly construed. *Conner v. State,* 696 P.2d 680, 682 (Alaska App.1985). Strict construction, however, does not require that statutes be given the narrowest meaning allowed by the language; rather, the language should be given "a reasonable or common sense construction, consonant with the objectives of the legislature." *Belarde v. Anchorage,* 634 P.2d 567 (Alaska App.1981) (quoting C. Sands, *Sutherland Statutory Construction,* § 59.06, at 18–19 (4th ed. 1974)). Common sense should be used to resolve questions of statutory construction when there is little legislative history from which to determine the objectives of the legislature. *Conner,* 696 P.2d at 682.

The express language of AS 11.56.510(a) does not indicate whether that statute's prohibition against the use of force was meant to include force that is both justified and unjustified; nor does the legislative history of this provision provide useful insight. Common sense, however, does not equate "force" with reasonable and appropriate actions inherent in a parent-child relationship.

▆▆ Had T.J. and M.J. been formally summoned to appear as witnesses prior to their departure, the Joneses would certainly have been legally precluded from removing them from the state of Alaska to avoid testifying, regardless of whether any force—justified or unjustified—was used. Under such circumstances, their conduct would have constituted tampering with a witness in the first degree, in violation of AS 11.56.540:

(a) A person commits the crime of tampering with a witness in the first degree if the person knowingly induces or attempts to induce a witness to

. . . .

(2) be absent from a judicial proceeding to which the witness has been summoned.

This provision, however, has no application to the Joneses' conduct, because T.J. and M.J. had not been summoned to appear before the grand jury prior to their departure from Alaska. They qualified as "witnesses" for purposes of the interference with official proceedings statute only because the Joneses had reasonable cause to believe that T.J. and M.J. might be summoned to testify at some future time. *See* AS 11.56.900(6)(B). In enacting the tampering with a witness statute, the legislature elected to extend its provisions only to witnesses who are formally summoned to appear.

Here, Patricia and Wesley Jones acted as parents and lawful custodians of T.J. and M.J. In this capacity, they were entitled to make decisions for their children to promote their welfare. Under AS 11.81.-430(a)(1), they were also entitled to use appropriate and necessary nondeadly force against their children to effectuate those decisions.

▆▆ Certainly, the Joneses were not entitled to decide that it was in the best interests of M.J. and T.J. to violate the law, or to enforce such a decision by the use of force against them. However, the Joneses were under no legal restraint precluding them from making decisions on behalf of the children that the children could lawfully have made for themselves as adults. M.J. and T.J. had never previously testified in a judicial proceeding, had not been subpoenaed to testify, and, consequently, were themselves under no legal restraint from leaving the state to avoid future testimony. Had T.J. and M.J. already reached the age of majority, they would have been entitled to decide, on their own, that it was in their best interest to leave the state in order to avoid testifying.

In our view, nothing in AS 11.56.510(a)(1) warrants the conclusion that, as parents and custodians of M.J. and T.J., Patricia and Wesley Jones were legally precluded from making precisely the same decision, so long as the decision was made to pro-

mote the interests of their children and so long as they did not seek to implement it by the use of force beyond that which would ordinarily be necessary and appropriate in a parental relationship. *See* AS 11.81.430(a)(1).

The state rejoins that the Joneses could not have been justified in using reasonable parental force, because there can be no privilege to obstruct justice by preventing a child from testifying. This argument, however, is flawed in its circularity, for it begins by assuming the very proposition that it seeks to prove: that the Joneses' conduct was unlawful. Yet, as we have already observed, M.J. and T.J. were free to leave the state to avoid testifying. While such a decision on their part might have been morally objectionable, it would not have been legally objectionable. It would not, in any legal sense, have constituted an obstruction of justice.

The mere fact that the Joneses, as parents and custodians, decided on a course of conduct for the girls that the state finds morally objectionable does not render either that conduct or the decision to embark upon it legally objectionable. We find no basis for holding the provisions governing justification of parental use of force to be categorically inapplicable in cases involving the interference with official proceedings statute.

To adopt the state's position would have far-reaching consequences. In the context of child sexual abuse victims who might be called to testify against a parent or a relative, the state's interpretation of the interference with official proceedings statute makes considerable sense. However, the disputed statute is not restricted to such cases. AS 11.56.510 applies broadly to all official proceedings. Under AS 11.81.- 900(b)(35), " 'official proceeding' means a proceeding heard before a legislative, judicial, administrative, or other governmental body or official authorized to hear evidence under oath...." To accept the state's interpretation of AS 11.56.510 would in effect require us to decide as a matter of public policy that whenever there was some possibility that a child's testimony might be desired at some future time in any judicial, legislative, or administrative proceeding— whether civil or criminal, whether brought by a public or a private party, and whether meritorious or frivolous—the parents of that child would be legally precluded from determining that it was in the child's best interest not to testify. We are unable to read the statutory language this broadly.

We thus hold that AS 11.56.510(a)(1), as currently written, does not, as a matter of law, categorically preclude a defense based on justified use of parental force under AS 11.81.430(a)(1).

Here, there has been no contention that the Joneses used any force beyond that typically used by parents toward their children in traveling from one location to another. Indeed, the grand jury was expressly told that any act of removal would qualify as "force" within the meaning of AS 11.56.510(a)(1). In dismissing the indictment against the Joneses, the superior court concluded that the Joneses' use of force was limited to that typical of any parental or custodial relationship. The state does not challenge this finding. We therefore conclude that the superior court's order dismissing the indictment must be affirmed.

We emphasize that our decision does not preclude either the grand jury or the finder of fact at trial from considering the circumstances surrounding a child's removal from the jurisdiction on a case-by-case basis, to determine the issue of justification as a factual matter. In many specific cases the finder of fact might conclude, based on the evidence presented, that a decision by parents to remove their child from the jurisdiction was not in fact made to promote the welfare of that child or was not reasonably necessary and appropriate to promote the child's welfare. Such a conclusion would warrant rejection as a factual matter of a defense based upon justified use of parental force. In the present case, if the state believes that the evidence would support rejection of this defense as a matter of fact, our decision does not preclude it from seeking a new

indictment, provided that the grand jury is correctly instructed on the applicable law.[1]

We do not intend to minimize the problem that arises when parents remove physically or sexually abused children from the jurisdiction in order to make those children unavailable to testify against parents or relatives in pending court proceedings. The problem may even exist in cases where the parents are unquestionably acting in the children's benefit—that is, to protect them from the emotional costs of trial—and are therefore within the protection of AS 11.81.430(a)(1). We recognize that the issues raised by such conduct are of tremendous significance, regardless of the parents' motivation. Our holding, however, is that AS 11.56.510, as presently written, may not readily be expanded to eliminate the problem. The ultimate resolution must be legislative rather than judicial. To that extent we would encourage the legislature to consider the problem.

The order of dismissal entered below is AFFIRMED.

COATS, J., concurs.

COATS, Judge, concurring.

I agree that the court correctly dismissed the indictment brought against the Joneses for interference with official proceedings. AS 11.56.510(a)(1). The Joneses arranged for M.J. and T.J. to fly to Arizona with Patricia Jones in order to keep them from testifying against Michael Jones. A common sense interpretation of the statute would indicate that the Joneses did not use unlawful force on the children to prevent them from testifying. Further, we are aware of no similar statute being interpreted to declare this type of conduct unlawful. Instead, the problem that I have with the

court's decision is its treatment of AS 11.-81.430(a)(1), which authorizes the reasonable use of nondeadly force by parents and other persons exercising care and supervision over minor children.

"Force" is defined broadly in AS 11.81.-900(b)(22) to include any "restraint." Thus, almost any action which a parent might take with a child could constitute "force," and violate the criminal law, unless the parent's action is permitted by AS 11.81.430(a)(1). Consequently, to avoid statutory vagueness and provide parents and other people who supervise children with sufficient freedom to act, AS 11.81.-430(a)(1) must be construed broadly.

The majority opinion could be interpreted to require a parent to prove in court that any restraint on a child must be "reasonably necessary and appropriate to promote the welfare of the child." It seems to me that this phrase must be broadly interpreted to allow the proper supervision of children without interference from the state.

Here, the Joneses' use of "force" consisted of flying T.J. and M.J. to Arizona. It seems clear to me that this use of force is authorized under AS 11.81.430(a)(1). Therefore, the Joneses should not be subject to someone else's decision whether their actions were "reasonably necessary to promote the welfare of the [children]."

I can certainly disagree with Joneses' actions in this case. At present, however, no statute makes their behavior illegal. I do not think that we should imply that their behavior might be made illegal because their actions might be construed as not "reasonably necessary to promote the welfare of the [children]." Parents must be given a great deal of deference in deciding

---

**1.** The provision governing justified use of parental force, as set out in AS 11.81.430, creates a defense. *See* AS 11.81.300. A defense is deemed to be raised when there is some evidence to place it in issue. *See* AS 11.81.-900(b)(15). Ordinarily, of course, the state is under no obligation to anticipate and develop potential defenses when it presents a case to the grand jury. *See, e.g., Frink v. State,* 597 P.2d 154 (Alaska 1979); *Clifton v. State,* 728 P.2d 649 (Alaska App.1986). Likewise, there may be no need to instruct the grand jury on the law gov-

erning a defense when that defense is not raised by the evidence. In a prosecution such as the one in the present case, however, where the defendants were undisputedly acting in the capacity of parents and the force that they allegedly used was not *per se* excessive, we believe that the question of justification becomes so integrally related to the statutory provisions defining the offense that an instruction on AS 11.81.430(a) would be necessary to a fair and informed consideration of the case by the grand jury.

what is best for their children, and statutes which might interfere with the parent-child relationship must be strictly construed. I do not think that the majority opinion makes this sufficiently clear.