NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| MARTIN DENNIS VICTOR IV,<br><br>      Petitioner,<br><br>   v.<br><br>STATE OF ALASKA,<br><br>      Respondent. | Court of Appeals No. A-13246<br>Trial Court No. 3AN-15-03304 CR<br><br><br>O P I N I O N<br><br><br>No. 2730 — August 12, 2022 |

Petition for Review from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for the Petitioner. Nancy R. Simel, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Clyde "Ed" Sniffen Jr., Acting Attorney General, Juneau, for the Respondent.

Before: Harbison, Judge, Mannheimer, Senior Judge,[*] and Suddock, Senior Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

This case requires us to interpret the provisions of Alaska law that govern situations where a criminal defendant is found to be incompetent to participate in their trial or their sentencing, and the defendant's incompetency persists so long that the court is required to dismiss the criminal charges under AS 12.47.110(b).

AS 12.47.110(b) declares that, in these situations, the dismissal of the criminal charges is "without prejudice" — that is, without detriment to, or derogation of, the State's right to re-initiate and pursue those charges. The question presented in this case is whether, even though AS 12.47.110(b) declares that the dismissal of the charges is without prejudice, the State is nevertheless barred from re-initiating the criminal charges unless the superior court first finds that the defendant has become competent to stand trial.

As a general matter, it is of course true that renewed litigation of the previously dismissed charges cannot go forward if the defendant remains incompetent to stand trial. This follows directly from AS 12.47.100(a) — the statute which declares that when a mentally ill criminal defendant lacks the capacity to understand the proceedings against them or to assist in their own defense, the defendant cannot be tried, found guilty, or sentenced.

But in the present case, the superior court never ruled that the defendant could be prosecuted even if he remained incompetent to stand trial. Rather, the ruling at issue in this case is the superior court's procedural decision regarding *how* the State can ask a trial court to re-initiate the litigation of the previously dismissed charges.

The defendant in this case, Martin Dennis Victor IV, takes the position that the State should be barred from re-initiating the previously dismissed charges until *after* the superior court affirmatively finds that the defendant is competent to stand trial. In the proceedings below, the superior court rejected this argument: The court ruled that the State could file a pleading to re-initiate the previously dismissed charges, and *then*

the parties could litigate the issue of whether Victor was competent to be tried and sentenced, or whether he remained incompetent to stand trial.

In this appeal, Victor contends that the superior court's ruling is inconsistent with the Alaska statutes governing the treatment of mentally ill defendants who are found to be incompetent to stand trial. Victor argues that, in cases like his, the State should not be allowed to re-initiate the previously dismissed charges until (1) the State offers new "legally obtained, credible evidence [that] the defendant's competence to stand trial has been restored", and then, based on this new evidence, (2) the superior court affirmatively finds that the defendant is competent to stand trial.

In other words, the issue presented here is a procedural one: Must the government procure a preliminary ruling from the superior court that the defendant is competent to stand trial *before* the government is allowed to file a pleading that re-initiates the previously dismissed charges? Or, as the superior court ruled in Victor's case, is the State allowed to re-initiate the charges and *then* the parties can litigate the issue of the defendant's competency to stand trial?

For the reasons explained in this opinion, we conclude that the superior court's resolution of this procedural issue was correct: The re-initiation of the charges — *i.e.*, the State's re-invocation of the superior court's jurisdiction over the case — must precede any renewed litigation on the question of the defendant's competency or lack of competency to stand trial.

Victor's briefing of this issue does, however, raise a different but related problem: Because the pertinent Alaska statutes do not explicitly place limitations on the State's ability to re-initiate the previously dismissed charges, there is a possibility that the State could harass a mentally ill defendant by repeatedly litigating the same dismissed charges — each time subjecting the defendant to judicial process, to potential pre-trial

incarceration, to renewed psychiatric evaluations, and (at the very least) to the anxiety of facing criminal proceedings again.

Because of this possibility, at least one court (the Washington Court of Appeals) allows defendants in this situation to challenge the government's decision to re-initiate the criminal charges, requiring the government to show that there is a reasonable basis for believing either that the defendant has become competent to stand trial or that the defendant could be rendered competent through the regimen of treatment authorized under the pertinent statutes. *See State v. Carneh*, 203 P.3d 1073, 1076–77 (Wash. App. 2009).

Under *Carneh*, the question is whether there is a reasonable basis for the government's decision to re-initiate the charges — some good reason to believe that the defendant has become competent to stand trial, or that the defendant could be rendered competent to stand trial through authorized treatment. Thus, *Carneh* does not require the government to offer convincing proof (at this point) that the defendant is competent to stand trial. Rather, the government need only convince the trial court that there is good reason to re-open the proceedings and re-assess the defendant's competency to stand trial.

As we explain in this opinion, we conclude that we need not decide whether to adopt such a procedural rule in Alaska — because, even assuming that the State is required to offer the trial court a reasonable basis for asking the court to re-examine the question of the defendant's competency to stand trial, the State satisfied that burden in Victor's case.

*Underlying facts, and an overview of the pertinent statutes*

> ### (a)  Victor's indictment, and the superior court's initial finding that Victor was not competent to stand trial

Under Alaska law — specifically, AS 12.47.100(a) — criminal defendants who are unable to understand the proceedings against them, or who are unable to assist in their own defense, cannot be tried, convicted (*i.e.*, found guilty), or sentenced.

If a court determines that a defendant is incompetent on either or both of the two grounds set forth in AS 12.47.100(a), the defendant cannot be brought to trial. If the defendant's trial has already begun, the trial cannot continue; or if the defendant has already been found guilty and is awaiting sentencing, the sentencing cannot go forward.  Rather, the court must stay the criminal proceedings.  If (as in Victor's case) the defendant is charged with a felony, the court must commit the defendant to the custody of the Department of Health and Social Services to see whether the defendant's competency can be restored through mental health treatment.  AS 12.47.110.

(In the discussion that follows, for simplicity's sake, we will refer to a defendant's competency to "stand trial" rather than repeatedly using the more exact but lengthier description, "competency to stand trial or be found guilty or be sentenced".)

The defendant in this case, Martin Dennis Victor IV, was charged with stabbing and attempting to kill his parents.  More specifically, in April 2015, a grand jury indicted Victor on two counts of attempted first-degree murder and two counts of first-degree assault.

Early in the proceedings, the court acknowledged that Victor might not be competent to stand trial — and, pursuant to AS 12.47.100(b), the court ordered that Victor be evaluated by a mental health professional.

Under the terms of AS 12.47.100(c), even after a court has concluded that there is reason to question the defendant's competency to stand trial and the court has ordered a psychiatric evaluation under AS 12.47.100(b), the law still presumes that the defendant is competent. Under this presumption, a defendant is deemed competent to stand trial unless and until the court affirmatively finds, by a preponderance of the evidence, that the defendant is not competent.

In Victor's case, after the superior court received the results of Victor's psychiatric evaluation and assessed Victor's competency under the provisions of AS 12.47.100(b) - (h), the court found that Victor was not competent to stand trial. Accordingly, as mandated by AS 12.47.110(a), the court committed Victor to the custody of the Department of Health and Social Services for treatment, to see if Victor could be restored to competency within the time limits set forth in AS 12.47.110(b).

### (b)  The subsequent proceedings under AS 12.47.110(b) relating to Victor's lack of competency to stand trial

In 1972, in *Jackson v. Indiana*, the United States Supreme Court ruled that it is unconstitutional to confine a criminal defendant for an indefinite period of time "solely on account of [the defendant's] incompetency to stand trial".[1]  The Supreme Court declared that when a defendant is held in custody solely because they lack the competency to stand trial, this period of confinement cannot exceed "the reasonable period of time necessary to determine whether there is a substantial probability that [the defendant] will attain competency in the foreseeable future."[2]  And if the criminal court concludes that there is no substantial probability that the defendant will be restored to

---

[1]  *Jackson v. Indiana*, 406 U.S. 715, 731; 92 S.Ct. 1845, 1854; 32 L.Ed.2d 435 (1972).

[2]  *Id.*, 406 U.S. at 738, 92 S.Ct. at 1858.

competency in the foreseeable future, the government must either institute civil commitment proceedings against the defendant or release the defendant. [3]

The provisions of AS 12.47.110 and AS 12.47.120 were apparently intended to codify procedures that would comply with the Supreme Court's holding in *Jackson v. Indiana*.

Under AS 12.47.110(a) and (b), the length of an incompetent defendant's initial commitment is limited to 90 days.

During this 90-day initial commitment, if the defendant's treatment provider concludes that the defendant has become competent to stand trial, the court is required to hold another competency hearing as soon as conveniently possible, *see* AS 12.47.120(a), and if the court concludes that the defendant has regained competency to stand trial, the court must release the defendant from their competency commitment, and the normal criminal process resumes. AS 12.47.120(b).

But even if the defendant is not released before the end of the initial 90-day commitment, AS 12.47.110(b) requires the court to again address the issue of the defendant's competency at the end of this initial commitment.

Even though, in this situation, the court has already affirmatively found that the defendant lacked competency to stand trial (when the court ordered the initial 90-day commitment), AS 12.47.110(b) specifies that the presumption of competency continues to apply. That is, the statute declares that the defendant will be deemed competent to stand trial unless "the court [again] finds by a preponderance of the evidence that the defendant remains incompetent".

In Victor's case, at the end of his initial 90-day commitment, the superior court found by a preponderance of the evidence that Victor continued to be incompetent

---

[3] *Ibid.*

to stand trial. In this situation, AS 12.47.110(b) authorizes a court to order a second 90-day commitment for continued treatment. The superior court exercised this statutory authority and ordered Victor to be committed for another 90 days.

Under AS 12.47.110(b), these two 90-day commitments are normally the outer limit of a court's authority to order the commitment of an incompetent defendant. In certain circumstances, the statute authorizes a court to order a third commitment for an additional 6 months — but only if the defendant is charged with a crime of violence, and only if the court finds (1) that there is a substantial danger that the defendant will cause physical injury to other persons if the commitment is ended, and (2) that there is also a substantial probability that the defendant will regain competency within a reasonable period of time.

In Victor's case, the superior court ruled that no third commitment was allowed — because, even though Victor was charged with crimes of violence, the court concluded that there was *not* a substantial probability that Victor would regain competency if he was committed and treated for these additional months. Thus, the superior court had reached the limit of its authority under AS 12.47.110(b) to commit Victor for treatment to restore his competency.

*(c)    The dismissal of Victor's criminal charges pursuant to AS 12.47.110(b), and Victor's civil commitment*

AS 12.47.110(b) declares that if a defendant remains incompetent when the court reaches the limit of its authority to order further mental health commitment in the criminal case, the court must dismiss the charges against the defendant "without prejudice" — that is, without detriment to, or derogation of, the State's right to re-initiate

and pursue the charges. [4]  If the charged crime is an unclassified felony or a class A felony, the statute allows the charge to be re-initiated at any time.  But if the charge is for any lesser crime, it cannot be re-initiated after 5 years.

AS 12.47.110(b) also declares that when the court in a criminal case reaches the limit of its authority to commit the defendant based on the defendant's lack of competency to stand trial, any further commitment of the defendant must be pursued in a civil commitment proceeding under AS 47.30.700 *et seq.* — the statutes that govern involuntary civil commitments of people who, because of mental illness, are either gravely disabled or pose a danger to themselves or others.

Accordingly, in Victor's case, the superior court gave the State a few days to file a petition for Victor's involuntary civil commitment, and then — in late January 2016 — the court dismissed the criminal charges against Victor.

When felony charges against a criminal defendant are dismissed because of the defendant's lack of competency to stand trial, and the State then initiates civil commitment proceedings against the defendant, Alaska law rebuttably presumes that there are sufficient grounds for civilly committing the defendant.  More precisely, the defendant "is rebuttably presumed to be mentally ill and to present a likelihood of serious harm to self or others".  AS 12.47.110(e).

In Victor's case, Victor either did not challenge this presumption or he failed to rebut it, and so he was civilly committed under AS 47.30.700 *et seq.*

---

   [4]   *See Alderman v. Iditarod Properties, Inc.*, 32 P.3d 373, 398 (Alaska 2001), declaring that when a motion is denied "without prejudice", this means "that no rights or privileges of the party concerned are to be considered ... waived or lost", except insofar as the court may have expressly decided (or the party whose action was dismissed may have expressly conceded).  *See also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2nd edition, 1995), page 937, which explains that the phrase "without prejudice" is used to describe a judicial action "that in no way harms or cancels the legal rights or privileges of a party".

*(d)  The prosecutor's request for disclosure of Victor's treatment records stemming from his civil commitment, and the superior court's ruling that is the subject of the present appeal*

In early April 2017, about fourteen months after Victor's criminal charges were dismissed under AS 12.47.110(b), the Anchorage District Attorney's Office filed a motion in Victor's closed criminal case.

In this motion, the District Attorney's Office asked the superior court to order the Alaska Psychiatric Institute to disclose Victor's treatment records to the District Attorney's Office (*i.e.*, the treatment records developed after January 2016 as a result of Victor's civil commitment).  The government's purpose in seeking disclosure of these records was to allow the District Attorney's Office to evaluate whether there was reason to believe that, during Victor's fourteen months of civil commitment and mental health treatment, Victor had become competent to stand trial.

Victor's attorney opposed the government's motion on several grounds.

First, Victor's attorney argued that the superior court no longer had subject-matter jurisdiction to entertain a new motion in Victor's criminal case, given the fact that Victor's criminal charges had been dismissed and his criminal case was closed.

Victor's attorney argued in the alternative that, even if the superior court had jurisdiction to entertain the prosecutor's motion, the court was required to deny the government's request for disclosure because AS 47.30.845 declares that all evaluation and treatment records related to a civil commitment are confidential.  Victor's attorney acknowledged that AS 47.30.845 allows disclosures that are "authorized by a court order" (*see* subsection (3) of that statute), but she argued that anyone seeking such a court order should be required to make a "substantive showing" that disclosure of the treatment records was proper — and Victor's attorney asserted that the District Attorney's Office had failed to make such a showing.

In addition, Victor's attorney argued that Victor's treatment records were privileged under Alaska Evidence Rule 504 (the psychotherapist-patient privilege), and that none of the exceptions listed in subsection (d) of that rule applied to Victor's situation.

After Victor's attorney filed this opposition to the government's request for disclosure of Victor's treatment records, the District Attorney's Office altered its position: The District Attorney's Office now conceded that it was improper to file the disclosure motion in Victor's closed criminal case. Instead, the District Attorney's Office announced that it would open a new criminal case against Victor by refiling the attempted murder and assault charges that had been dismissed pursuant to AS 12.47.110(b) — and then, after these charges were re-initiated, the District Attorney's Office would ask the court to order a new competency evaluation under AS 12.47.100 and 110.

In response to the government's new litigation position, Victor's attorney argued that it would be unlawful for the District Attorney's Office to re-initiate the charges in a new criminal case unless the government first presented the superior court with an offer of proof — a recitation of new admissible evidence tending to prove that Victor had become competent to stand trial.

Victor's attorney conceded that neither the relevant statutes nor the relevant case law imposed this pre-filing requirement. Nevertheless, Victor's attorney took the position that AS 12.47.110, as well as related "constitutional interests", implicitly required the government to offer new evidence tending to prove that Victor had become competent to stand trial before the government would be allowed to re-initiate its criminal charges.

The superior court ultimately rejected Victor's argument that the government was required to prove that Victor was competent to stand trial before the

government could re-initiate the dismissed charges. Instead, the court declared that it would not prohibit the District Attorney's Office "[filing] whatever they want to file."

In effect, the superior court ruled that the State was empowered to re-initiate the charges against Victor without any prior judicial screening — thus implying that the court intended to defer the litigation of all of the other issues that the parties had raised (most importantly, the issue of Victor's competency to stand trial) until *after* the State re-initiated the charges.

Victor's attorney petitioned this Court to review the superior court's ruling, and we granted this petition for review. Now, for the reasons we are about to explain, we uphold the superior court's ruling.

*A general description of our ruling*

Both Victor and the State agree that when criminal charges are dismissed without prejudice under the provisions of AS 12.47.110(b) — *i.e.*, dismissed because the court finds that the defendant lacks the competency to stand trial — the State is entitled to re-initiate the charges. The question is how.

Victor asserts that, in this situation, Alaska law implicitly prohibits the court from allowing the State to re-initiate the previously dismissed charges unless the State first proves that the defendant is competent to stand trial. The superior court, on the other hand, has ruled that the State can re-initiate the previously dismissed charges without first proving (as a preliminary matter) that the defendant is competent to stand trial — thus leaving until later the issue of the defendant's competency (assuming that someone raises this issue).

Although the relevant statutes found in AS 12.47 do not directly resolve this question, we affirm the superior court's ruling for several inter-related reasons.

First, the superior court's ruling is consistent with Alaska law regarding the State's ability to file the *initial* criminal charges against a mentally ill defendant. Even in cases where there are obvious reasons to doubt a person's competency to stand trial, Alaska law allows the State to file criminal charges against the person — thus allowing the court to establish both subject-matter jurisdiction over the case and personal jurisdiction over the defendant.

Second, the superior court's ruling is consistent with the idea that, even when criminal charges are dismissed under AS 12.47.110(b) because of the defendant's persisting lack of competency to stand trial, the superior court still maintains subject-matter jurisdiction over the case and personal jurisdiction over the defendant.

This is, in fact, the view advocated by Victor in this appeal: that a dismissal of criminal charges under AS 12.47.110(b) is, legally speaking, a long-term continuation of the stay of the proceedings that takes effect under AS 12.47.110(a) when the superior court initially finds that a defendant is not competent to stand trial.

The superior court's continuing subject-matter jurisdiction over the criminal case and personal jurisdiction over the defendant are crucial — because, without this jurisdiction, the court would have no authority to re-assess whether the defendant was competent to stand trial. (Indeed, a court lacking jurisdiction would have no authority to conduct litigation regarding this or any other aspect of the case.)[5]

If the superior court remains vested with subject-matter and personal jurisdiction even after criminal charges are dismissed without prejudice under AS 12.47.-110(b), this suggests that the State need only file some sort of pleading that actively

---

[5] *See Cramer v. Wade*, 985 P.2d 467, 470 (Alaska 1999) ("A judgment is void if the court that rendered it lacked personal jurisdiction over the defendant."); *Jacko v. State*, 981 P.2d 1075, 1078 (Alaska App. 1999) (same); *State v. Gottschalk*, 138 P.3d 1170, 1173–74 (Alaska App. 2006) (Judge Mannheimer, concurring).

invokes the superior court's continuing jurisdiction over the case — and *then* the court is authorized to conduct litigation to re-assess the defendant's competency to stand trial.

Third, the superior court's ruling resolves the related procedural question of *how* the superior court is to conduct any renewed litigation regarding the defendant's competency to stand trial. The Alaska legislature has already provided detailed procedures for a court to use when it evaluates a criminal defendant's competency to stand trial. These procedures are set forth in AS 12.47.100(b) - (h). But all of these statutory procedures assume that the court has *already* acquired jurisdiction over the case and over the defendant — so that, for example, the court has the authority to appoint one or more psychiatrists or psychologists to examine the defendant, and so that the parties (and the court itself; *see* Alaska Evidence Rule 614) are entitled to use court process to obtain the testimony of witnesses and other evidence relevant to the issue of the defendant's competency.

Technically, the procedures listed in AS 12.47.100(b) - (h) apply only to the superior court's *initial* series of evaluations of a defendant's competency — the assessments that can be triggered at any time during the initial criminal litigation, up until the time the defendant is sentenced. (See the first clause of AS 12.47.100(b).)

But given the number and specificity of these statutory procedures for evaluating a defendant's competency to stand trial, we conclude that the Alaska legislature assumed that any renewed litigation regarding a criminal defendant's competency to stand trial would be carried out under these same or analogous procedures.

We provide a more detailed explanation of these rationales in our opinion. But our conclusion is this: The superior court was correct when it ruled that, in situations like Victor's case, the proper procedure is for the State to file pleadings to

re-initiate the criminal case and *then*, if someone questions the defendant's competency to stand trial, the court re-assesses the defendant's competency.

We therefore affirm the superior court's decision to allow the State to re-initiate the criminal charges against Victor, and we remand this case to the superior court for litigation of those criminal charges — including litigation of Victor's competency to stand trial (since, in Victor's case, this issue has already been raised).

*The interplay between AS 12.47.110(b) and the civil commitment statutes,*
*AS 47.30.700 et seq.*

AS 12.47.110(b) — the statute that sets forth the procedures for situations where a criminal defendant is not competent to stand trial — was enacted as part of the same 1981 session law that enacted Alaska's involuntary commitment procedures, AS 47.30.700 *et seq.* (The relevant session law is SLA 1981, ch. 84, §§ 1 and 4.)[6]

Because the Alaska Legislature debated and passed these statutes as part of a single legislative package, we must construe these statutes in light of each other, treating them as a unified legislative approach to the problem of criminal defendants who

---

[6] More precisely, this 1981 session law enacted AS 12.*45*.110(b) — the immediate predecessor of our current statute, AS 12.47.110(b). The following year, the legislature moved the provisions of AS 12.45 dealing with insanity and incompetency to stand trial into a new chapter of the statutes, AS 12.47. *See* SLA 1982, ch. 143, § 22.

The original 1982 version of AS 12.47.110(b) was almost the same as the predecessor statute, AS 12.45.110(b), except that the wording of AS 12.47.110(b) was modified to be gender-neutral, and the legislature expanded the exceptions to the 5-year limitation on refiling the dismissed charges (by making all unclassified and class A felony charges exempt from this 5-year limitation). Since that time, AS 12.47.110(b) has been amended once, *see* SLA 2008, ch. 75, § 20, but this amendment was not substantive.

suffer from a mental illness that renders them incompetent to stand trial and also potentially dangerous, or gravely disabled, or both. [7]

As we have already explained, AS 12.47.110(b) declares that if, in a criminal proceeding, the defendant remains incompetent to stand trial when the court reaches the limit of its authority to hold the defendant for treatment to remedy this incompetency, the criminal charges must be dismissed without prejudice, and any further commitment proceedings are governed by the provisions of Title 47 relating to involuntary civil commitment.

This fact — that a defendant's continued mental health commitment is governed by the civil commitment statutes (AS 47.30.700 *et seq.*) — is one of the main sources of the legal controversy in Victor's case. More specifically, this controversy arises from two aspects of the civil commitment statutes.

First, the criteria for civil commitment are different from the criteria for commitment of an incompetent criminal defendant under AS 12.47.110. And second, when a defendant is civilly committed, the defendant's treatment records are confidential and are no longer directly available to the court and the prosecutor's office who handled the criminal proceedings. *See* AS 47.30.845.

The test for whether a defendant in a criminal case can be committed for mental health treatment under AS 12.47.110(b) is whether the court finds, by a

---

[7] *See Peters v. State*, 943 P.2d 418, 420 (Alaska App. 1997): " 'The guiding principle of statutory construction is to ascertain and implement the intent of the legislature ... .' *Millman v. State*, 841 P.2d 190, 194 (Alaska App. 1992). To that end, statutes dealing with the same or related subject matter should be construed 'as harmoniously as possible.' *Borg–Warner Corp. v. Avco Corp.*, 850 P.2d 628, 633–34 (Alaska 1993). Such statutes 'should be read together as a whole in order that a total scheme evolves which maintains the integrity of each act and avoids ignoring one provision over another.' *Conner v. State*, 696 P.2d 680, 682 n. 3 (Alaska App. 1985)."

preponderance of the evidence, that the defendant lacks the ability to understand the nature of the proceedings against them, and/or lacks the ability to assist in their own defense.[8] But this type of mental disability, and this "preponderance of the evidence" burden of proof, are not sufficient to support an involuntary civil commitment under AS 47.30.700 *et seq*.

Under the relevant provisions of the civil commitment statutes, a person can be involuntarily committed to the custody of the Department of Health and Social Services for mental health treatment only if the superior court finds, by clear and convincing evidence, that the person is mentally ill and that, because of this mental illness, the person is either gravely disabled or the person is likely to cause serious harm to themself or others.[9]

(For these purposes, a person is "gravely disabled" if, as a result of mental illness, (a) the person so completely neglects their basic needs and their personal safety as to make it highly probable that they will suffer serious accident, illness, or death unless they are committed to the care of others, or if (b) the person will, unless treated, experience severe and abnormal mental, emotional, or physical distress associated with a significant impairment of their judgement, reason, or behavior, thus leading to a substantial deterioration of their ability to function independently. *See* AS 47.30.915(9).)

Because the criteria for involuntary civil commitment are different from the criteria for commitment of an incompetent criminal defendant under AS 12.47.110, and because civil commitment treatment records are confidential under AS 47.30.845, there

---

[8]   AS 12.47.100(a); *Gamble v. State*, 334 P.3d 714, 717 (Alaska App. 2014); *Schade v. State*, 512 P.2d 907, 914 (Alaska 1973) (decided under prior law).

[9]   *See* AS 47.30.735(c) (initial 30-day commitment), AS 47.30.745(b) and AS 47.30.-755(a) (subsequent 90-day commitment), and AS 47.30.770(b) - (c) (any ensuing 180-day commitments).

are (broadly speaking) three possible scenarios that can arise after the superior court reaches the limit of its authority under AS 12.47.110(b) to hold a criminal defendant for involuntary mental health treatment to restore the defendant's competency to stand trial.

*Scenario 1*: There will be times when a defendant who is incompetent to stand trial cannot be civilly committed under AS 47.30.700 *et seq.* because the State will be unable to prove, by the higher standard of clear and convincing evidence, that the defendant is gravely disabled or that the defendant is likely to cause serious harm to themself or others. In this first scenario, the defendant must be released from custody.

As we explained earlier, when a defendant is charged with one or more felonies and the charges are dismissed because of the defendant's lack of competency to stand trial, Alaska law rebuttably *presumes* that the defendant can be committed on the grounds that the defendant is mentally ill and presents a likelihood of serious harm to themself or others. *See* AS 12.47.110(e). But not all felonies are crimes of violence, and there will be times when this presumption of dangerousness is rebutted.

*Scenario 2*: There will be times when a defendant who is not competent to stand trial is civilly committed under AS 47.30.700 *et seq.* and later — after the defendant has received mental health treatment in connection with their civil commitment — the defendant's mental illness is ameliorated to the point where the defendant is no longer gravely disabled and no longer poses a danger of serious harm to themself or others.

In this situation, Alaska law requires that the defendant be released from their civil commitment. *See* AS 47.30.780. However, subsection (b) of this statute declares that in cases where a person has been civilly committed "after having been found incompetent to proceed under AS 12.47.110" — *i.e.*, in cases where criminal charges were dismissed because the defendant was found to be incompetent to stand trial and the defendant's competency could not be restored within the time allowed by

AS 12.47.110(b) — the mental health professional in charge of the defendant's civil commitment "[must] give the prosecuting authority 10 days' notice" before the defendant is released from their civil commitment.

The fact that the legislature requires the defendant's treatment provider to notify the prosecutor of the defendant's impending release implies that the legislature thought that prosecuting attorneys might wish to take some sort of action after receiving news of the defendant's imminent release from civil commitment — *e.g.*, action to revive the criminal charges that were earlier dismissed under AS 12.47.110(b). But no provision of AS 47.30 (nor any provision of AS 12.47) describes what a prosecutor is supposed to do, or is authorized to do, after receiving this notice from the defendant's treatment provider.

Conceivably, the legislature included this statutory notice requirement because the legislature thought that the defendant's release from civil commitment was, by itself, a sufficient justification for the prosecutor to re-initiate the criminal charges that were dismissed earlier under AS 12.47.110(b).

A defendant's release from civil commitment does not *necessarily* mean that the defendant is now competent to stand trial — because, again, the criteria for competence to stand trial are different from the criteria for involuntary mental commitment. There may be times when, even though a defendant no longer meets the criteria for involuntary civil commitment, the defendant nevertheless remains unable to understand the nature of the criminal proceedings or remains unable to assist in their own defense.

For this same reason, when a defendant is released from a civil commitment pursuant to AS 47.30.780, the defendant's release will normally not be accompanied by any explicit finding by the defendant's treatment provider regarding whether the defendant has regained competency to stand trial — because the question of whether the

defendant is competent to stand trial has only marginal relevance to the question of whether the facts justify the defendant's continued civil commitment.

But even though different standards govern competency to stand trial and involuntary civil commitment, the legislature may have believed that a defendant's release from civil commitment was at least a good *indication* that the defendant had regained their competency to stand trial — and that, for this reason, the defendant's release from civil commitment justified a prosecutor in re-initiating the previously dismissed charges.

Alternatively, the legislature might have thought that the defendant's release from civil commitment was at least a sufficient justification for the prosecutor to seek an order from the superior court authorizing the disclosure of the defendant's mental health treatment records to the prosecutor under AS 47.30.845(3) — so that the prosecutor could then assess whether there was reason to believe that the defendant had regained competency to stand trial and, if so, whether the dismissed criminal charges should be re-initiated.

But none of this is explained in the pertinent statutes. The legislature clearly thought that there was *some* good reason to require the defendant's treatment provider to notify the prosecutor that the defendant was about to be released from civil commitment. But the legislature did not explain what the prosecutor was expected to do with this information.

*Scenario 3*: Because a defendant's continued civil commitment hinges on the defendant's disability and/or dangerousness, and *not* on their lack of competency to stand trial, there will be times when a defendant who has been civilly committed will become competent to stand trial after they have received mental health treatment, even though the grounds for the defendant's involuntary civil commitment still exist.

In other words, even though a defendant remains gravely disabled and/or a danger to themselves or others because of their mental illness, there will be times when the defendant's mental health improves to the point where they can understand the nature of the criminal proceedings and are capable of assisting in their own defense.

Under AS 47.30.780, the defendant's civil commitment treatment providers have a duty to periodically re-assess whether the defendant still meets the criteria for civil commitment (*i.e.*, whether the defendant remains gravely disabled, or continues to pose a threat of serious harm to themselves or others, or both). But AS 47.30 does not impose a corresponding duty on these treatment providers to periodically re-assess whether the defendant has likely become competent to stand trial — even though these treatment providers undoubtedly have some of the most important information on this question.

Thus, even if the defendant's treatment providers affirmatively conclude that the defendant's mental health has improved to the point where the defendant is likely competent to stand trial, these treatment providers have no duty to report this change in the defendant's mental health status to the court or to the prosecuting authority. In fact, absent a court order, these treatment providers are seemingly *forbidden* from alerting the prosecuting authority that the defendant has likely regained their competency to stand trial — because all information and treatment records arising from a person's civil commitment are confidential under AS 47.30.845, and treatment providers are barred from disclosing this information unless the disclosure is authorized by one of the exceptions listed in that statute.

None of these exceptions listed in AS 47.30.845 expressly apply to situations where (1) criminal charges against a defendant were dismissed because of the defendant's lack of competency, (2) the defendant was civilly committed, and (3) the mental health treatment provided during the defendant's civil commitment has improved

– 21 –                                                                                          2730

the defendant's mental health to the point where there is good reason to believe that the defendant is competent to stand trial.

The only statutory exception that potentially applies to this situation is AS 47.30.845(3), which allows disclosures that are "authorized by a court order". But the legislature has not prescribed any procedure by which a prosecutor in these circumstances might obtain information from the defendant's treatment providers regarding the defendant's likely competence to stand trial — the information that might provide a basis for the prosecutor to seek a court order disclosing the defendant's treatment records.

*The procedural question of how the State is to re-initiate criminal charges against a defendant after those charges have been dismissed because of the defendant's lack of competence to stand trial*

As we have just explained, the interplay between AS 12.47.110(b) and the civil commitment statutes gives rise to many questions — and these statutes do not supply, or only hint at, the answers to these questions. But for purposes of the present appeal, we need answer only one of these questions: the question of the procedural method that the government should employ to re-initiate criminal charges against a defendant after those charges have been dismissed because of the defendant's lack of competence to stand trial.

AS 12.47.110(b) declares that any dismissal of charges in these circumstances shall be "without prejudice" — a phrase which, under established Alaska law, means that the dismissal is without detriment to, or derogation of, the State's right

to pursue the criminal charges, so long as the circumstance that required the dismissal is remedied. [10]

In order for the superior court to entertain any renewed litigation pertaining to the previously dismissed charges, there must be a procedural mechanism for the government to invoke the subject-matter jurisdiction of the superior court (*i.e.*, the court's authority over the criminal case) and the court's personal jurisdiction over the defendant. [11]

In Victor's case (as we described earlier in this opinion), the Anchorage District Attorney's Office first attempted to invoke the superior court's jurisdiction by filing a motion for discovery in the earlier criminal case — a motion asking the court to order disclosure of Victor's civil commitment treatment records. But Victor's attorney argued that it was improper to file any new motions in the earlier case, since that earlier case had been closed. In response, the District Attorney's Office conceded that Victor's attorney was right — and, therefore, they decided to invoke the superior court's jurisdiction by re-filing the previously dismissed charges in a new criminal case.

This procedural history raises two questions. One of these questions involves substantive law, while the other question involves matters of court administration and clerical practices.

The substantive question is this: How is a party to invoke the superior court's subject-matter jurisdiction over the defendant's criminal case and its personal

---

[10] See footnote 4.

[11] *See*, *e.g.*, *State v. Carneh*, 203 P.3d 1073, 1076–77 (Wash. App. 2009).

jurisdiction over the defendant? For without jurisdiction, the court has no authority to issue any binding ruling against either the State or the defendant. [12]

The Washington Court of Appeals confronted this problem in *State v. Carneh*, [13] a case involving a defendant whose criminal charges were dismissed because the defendant lacked the competency to stand trial, and where the government later attempted to re-initiate the charges.

When the government attempted to re-initiate the charges, Carneh raised essentially the same argument that Victor raises here: the contention that the government should not be allowed to re-initiate the previously dismissed criminal charges until the court had first re-assessed the defendant's mental status and had affirmatively found that the defendant was competent to stand trial. [14]

But as the Washington Court of Appeals explained in *Carneh*, this argument is inconsistent with the legal principle that a court must have both subject-matter jurisdiction over the controversy and personal jurisdiction over the defendant *before* the court entertains litigation concerning the issues in the case — for example, the issue of whether the defendant is currently competent to stand trial. [15]

For this reason, the Washington court rejected Carneh's argument that the charges could not be refiled until after a court found the defendant to be competent to stand trial. Instead, the Washington court held that the government was entitled to file

---

[12]   *See Cramer v. Wade*, 985 P.2d 467, 470 (Alaska 1999) ("A judgment is void if the court that rendered it lacked personal jurisdiction over the defendant.").

[13]   203 P.3d 1073 (Wash. App. 2009).

[14]   *Id.*, 203 P.3d at 1075–76.

[15]   *Ibid.*

pleadings that re-initiated the charges, and *then* a trial court would re-assess whether the defendant was competent to stand trial. [16]

For much the same reasons, we reject Victor's argument in this appeal.

In cases like Victor's, where charges have been dismissed under AS 12.47.110(b) because of the defendant's lack of competency to stand trial, it is essential for the superior court to have jurisdiction over the case and over the defendant before the court conducts any new litigation to re-assess whether the defendant is competent to stand trial.

Potentially, AS 12.47.110(b) could be construed as meaning that, when charges are dismissed because of the defendant's lack of competency, the superior court loses jurisdiction over the case and loses personal jurisdiction over the defendant. Under this "loss of jurisdiction" interpretation of AS 12.47.110(b), if the State wished to restart any litigation pertaining to the previously dismissed criminal charges, the State would have to take the same steps required in any new criminal case to establish the court's subject-matter jurisdiction (by filing a set of charges) and to establish the court's personal jurisdiction over the defendant (either by arresting the defendant or by serving the defendant with a summons based on the newly filed charges).

This appears to have been the position that Victor's attorney took in the superior court. But as we explained earlier in this opinion, Victor does not argue on appeal that the superior court loses subject-matter jurisdiction over the criminal case or personal jurisdiction over the defendant when charges are dismissed under AS 12.47.-110(b). Rather, Victor takes the position that a dismissal without prejudice under AS 12.47.110(b) should be viewed as a continued stay of the prosecution based on the defendant's lack of competency.

---

[16] *Id.* at 1076–77.

Under this view, the superior court remains vested with jurisdiction to conduct renewed proceedings pertaining to the previously dismissed charges — in particular, litigation regarding the defendant's competency to stand trial on those charges.

These questions — the superior court's jurisdiction to entertain renewed litigation pertaining to the dismissed charges, and the procedures that should be employed to invoke or re-invoke that jurisdiction — are not addressed (much less answered) in the pertinent provisions of AS 12.47. But we conclude that it is more consistent with these statutes to view a dismissal without prejudice under AS 12.47.-110(b) as, in effect, a continuation of the stay that began when the superior court initially found the defendant incompetent to stand trial. *See* AS 12.47.110(a). This means that the superior court has a continuing, albeit dormant, jurisdiction over the case and over the defendant. We reach this conclusion for several reasons.

First, the view that the superior court has continuing jurisdiction over the case and over the defendant is more consistent with the legislature's decision that any dismissal under AS 12.47.110(b) is "without prejudice".

As we have explained, the phrase "without prejudice" means that the dismissal is without detriment to the State's ability to re-initiate the charges. [17] Under Alaska law, a dismissal without prejudice means that "no rights or privileges of the party concerned are waived or lost" except insofar as the trial court may have expressly decided otherwise. [18]

---

[17] *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* (2nd edition, 1995), page 937, stating that the phrase "without prejudice" describes a judicial action "that in no way harms or cancels the legal rights or privileges of a party".

[18] *Alderman v. Iditarod Properties, Inc.*, 32 P.3d 373, 398 (Alaska 2001).

For example, in felony prosecutions, a dismissal of the charges under AS 12.47.110(b) will normally occur after the defendant has been indicted by a grand jury (because, under Alaska Criminal Rule 10(a), the superior court does not arraign a criminal defendant until the defendant has been indicted or has waived the right of indictment). If the State later re-initiates proceedings on the previously dismissed charges, the fact that the earlier dismissal was "without prejudice" means that the State would not need to procure a new grand jury indictment (unless the defendant had also successfully attacked the indictment in pre-trial motion practice before the charges were dismissed).

Similarly, a dismissal "without prejudice" implies that the State does not need to re-establish the superior court's subject-matter jurisdiction over the case or its personal jurisdiction over the defendant. This jurisdiction carries over in the event the State re-initiates the charges.

Second, if the superior court has continuing jurisdiction over the case and over the defendant, this allows the court and the parties to utilize the detailed procedures set forth in AS 12.47.100(b) - (h), and to utilize court process to obtain relevant evidence, when the court conducts any new assessment of the defendant's competency to stand trial.

When Victor argues that the State is barred from re-initiating the criminal charges until *after* the superior court finds that the defendant is competent to stand trial, Victor is implicitly arguing that the superior court's re-assessment of the defendant's competency must take place *outside* the confines of the criminal case, leaving the superior court with no ready procedures to conduct this litigation and to re-assess the defendant's competency. But in AS 12.47.100(b) - (h), the Alaska legislature has already specified, in substantial detail, the procedures that a court is to employ when the court evaluates a criminal defendant's competency to stand trial.

All of these statutory procedures assume that the court has *already* acquired jurisdiction over the case and over the defendant — so that, for example, the court has the authority to appoint one or more psychiatrists or psychologists to examine the defendant, and so that the parties (and the court itself; *see* Alaska Evidence Rule 614) are entitled to use court process to obtain the testimony of witnesses and other evidence relevant to the issue of the defendant's competency.

Technically, the procedures listed in AS 12.47.100(b) - (h) apply only to the superior court's *initial* series of evaluations of a defendant's competency — the assessments that can be triggered at any time during the initial criminal litigation up until the time the defendant is sentenced. [19] The Alaska legislature has not explicitly directed the superior court to employ these same procedures in cases where charges have been dismissed without prejudice under AS 12.47.110(b) and the State later seeks to re-initiate those charges.

But given the number and specificity of the procedures that the legislature established in AS 12.47.100(b) - (h) for evaluating a defendant's competency to stand trial, we conclude that the Alaska legislature assumed that any renewed litigation regarding the defendant's competency would be carried out under these same or analogous procedures. In other words, the legislature anticipated that the procedures governing any later re-assessment of the defendant's competency to stand trial would resemble the procedures that the superior court and the parties employed during the original round of assessments.

Indeed, without such procedures — in particular, the court's power to order one or more psychiatric evaluations of the defendant, and the parties' power to use court process to procure other relevant evidence — it would be all but impossible for the

_____

[19]  *See* AS 12.47.100(b) (first sentence).

superior court to make a reasoned assessment of the defendant's competency to stand trial.

Despite all this, Victor contends that the State must be required to prove that the defendant is competent to stand trial *before* the superior court allows the State to re-initiate the previously dismissed criminal charges.

Victor acknowledges that, after the criminal charges are re-initiated, either his attorney or the superior court (or even the prosecutor) is entitled to raise the issue of Victor's competency to stand trial — and, if it is shown that Victor is not competent, then the proceedings cannot go forward.

But Victor argues that, in situations like his, these protections are not enough. He contends that in cases where criminal charges were previously dismissed under AS 12.47.110(b), the fact that the defendant was *previously* found incompetent to stand trial is sufficient, by itself, to justify a rule requiring the government to offer affirmative proof of the defendant's competency before any other proceedings take place. Moreover, Victor argues, a court should not grant the prosecutor a hearing on the issue of the defendant's competency to stand trial until the prosecutor first offers admissible evidence suggesting a material change in the defendant's mental status.

We acknowledge that Victor's proposed procedural rule would protect defendants against the possibility that a prosecutor might abuse the State's right to refile the charges — harassing a defendant when there was no reason to believe that there had been any alteration in the defendant's mental status. We discuss this problem in the next section of our opinion.

But it would defeat the ends of justice if we adopted a procedural rule that required the State to prove the defendant's competency to stand trial *before* the State could avail itself of court process to gather evidence to support this claim — because, in a typical case, it is unclear how a prosecutor might gather evidence of a defendant's

competency to stand trial, or even evidence of a material change in the defendant's mental state, unless the prosecutor could invoke the processes of the court.

In cases where criminal charges have been dismissed because of the defendant's lack of competency to stand trial, and where the defendant has subsequently been civilly committed under Title 47, most (if not all) of the information relevant to assessing the defendant's mental status, and whether the defendant has become competent to stand trial, will be in the hands of the defendant's civil treatment providers.

As we explained earlier in this opinion when we described "Scenario 3", there will be times when the mental condition of a civilly committed defendant improves to the point where the defendant is competent to stand trial, even though the defendant's mental condition still justifies their civil commitment (because the defendant remains gravely disabled and/or dangerous on account of their mental illness). But the defendant's mental health providers are not required to periodically assess whether the defendant has become competent to stand trial. Rather, those treatment providers are only required to periodically re-assess whether the grounds for the defendant's *civil commitment* still exist.

Moreover, those treatment providers operate under a statutory mandate of confidentiality. Thus, even if a defendant's treatment providers were to conclude that the defendant had become competent to stand trial, they would seemingly be forbidden from informing the prosecuting authority of this change in the defendant's mental status — because, under AS 47.30.845, this information could not be revealed to the prosecuting authority without a court order.

So if, as Victor argues, a prosecutor should not be allowed to litigate the question of the defendant's competency until *after* the prosecutor offers evidence suggesting a material change in the defendant's mental status, this would effectively put the government in a "Catch-22" situation — because, in most cases, the information

needed for this *prima facie* showing would be the very information that is withheld from the prosecutor under the confidentiality provisions of AS 47.30.845.

Of course, there may be other people besides a defendant's treatment providers who have knowledge of the defendant's mental status. Family members or close friends may attend the civil commitment hearings[20] and they may have visiting privileges at the defendant's treatment facility. Because these family members and friends are not treatment providers, they would not be constrained by the confidentiality provisions of AS 47.30.845, and thus they could reveal any pertinent knowledge they might have regarding the defendant's mental status.

But in many cases, these relatives and friends will wish to protect the defendant from renewed prosecution, and they would not willingly cooperate with a prosecutor's efforts to refile the charges. Unless the prosecutor was able to use court process to depose these witnesses or otherwise procure their testimony, the prosecutor would never have access to these witnesses' information pertaining to the defendant's mental status.

Victor's case appears to represent the less common situation where family members who have first-hand knowledge of the defendant's mental status are willing to voluntarily share their knowledge with the prosecutor (without the compulsion of court process) and to cooperate with the prosecutor's efforts to renew the criminal charges. But in many other cases, if the defendant remains civilly committed, the State may face insurmountable difficulties in obtaining information relevant to the defendant's mental status, much less the defendant's ultimate competence to stand trial, unless the State has access to judicial process to compel disclosure of this information. Thus, the procedural

---

[20] *See* AS 47.30.735(b)(3) and AS 47.30.750 (commitment hearings may be open or closed to the public, at the respondent's election).

rule that Victor suggests would, in many instances, effectively defeat the State's right to re-initiate the charges.

For all these reasons, we conclude that the superior court's procedural view of Victor's case was correct: the State must be allowed to file a pleading that invokes the superior court's continuing jurisdiction over the criminal case, and *then* the court is authorized to conduct litigation to re-assess the defendant's competency to stand trial.

By ruling that the State is entitled to re-initiate the charges without prior judicial approval, we do not mean to say that the State is entitled to arrest defendants and remove them from their involuntary civil commitments. Under the terms of Alaska Criminal Rule 4(a)(2), when criminal charges are filed against a person, the court must issue a summons (as opposed to an arrest warrant) unless the court finds that an arrest is necessary to ensure the defendant's presence in court or to prevent the defendant from posing a danger to other persons or the community. If a defendant remains involuntarily committed to the legal and physical custody of the Department of Health and Social Services at the time the State re-initiates the previously dismissed charges, Criminal Rule 4(a)(2) will normally require that the defendant be summoned rather than arrested.

One subsidiary procedural issue remains: What sort of pleading should the State file?

In Victor's case (as we explained earlier), the District Attorney's Office first attempted to re-initiate the proceedings by filing a motion in Victor's original criminal case — a case that apparently had been closed by the clerk's office after the charges against Victor were dismissed under AS 12.47.110(b). Because the earlier case was closed, Victor's attorney urged the superior court to reject the government's pleading — arguing that it was improper for either party to file a motion in a closed case. In response, the District Attorney's Office told the superior court that Victor's attorney was right, and that the government would file new charges that reiterated the previously

dismissed charges. The superior court ultimately allowed the litigation to go forward in this procedural posture.

The applicable statutes do not explain which of the two procedures the Alaska legislature had in mind — *i.e.*, whether the legislature intended for a prosecutor to file a motion to re-open the earlier criminal case or, instead, to re-file the previously dismissed charges in a new criminal case. But whichever course of action the legislature contemplated, the State's act of filing the renewed charges against Victor was clearly sufficient to invoke the superior court's subject-matter jurisdiction to entertain renewed proceedings pertaining to the previously dismissed charges.

This follows from the fact that the legislature obviously contemplated that the government should have *some method* for reviving the dismissed charges, and (given the circumstances of Victor's case) the State's pleading was clearly intended to invoke the superior court's continuing but dormant jurisdiction over the previously dismissed charges. In fact, *both* the State's motion in the previously dismissed criminal case and its filing of renewed charges in a new criminal case clearly had this same goal.

Under Alaska law, the character of any pleading is determined by its subject matter, not by its title or designation. [21] Thus, regardless of what the State called its pleadings (and regardless of which procedure the legislature envisioned), the superior court could properly treat either of the State's pleadings as an invocation of the court's jurisdiction over the previously dismissed charges (and its personal jurisdiction over Victor).

Indeed, because the procedure for re-invoking the superior court's jurisdiction in this type of case is not specified by either a statute or a court rule, the superior

---

[21] *Shorthill v. State*, 354 P.3d 1093, 1113 (Alaska App. 2015); *Crawford v. State*, 337 P.3d 4, 15 (Alaska App. 2014).

court and the clerk's office probably have the authority to adopt the administrative procedures they think best.

Here, for example, the clerk's office closed Victor's earlier case after the charges were dismissed under AS 12.47.110(b), rather than keep the case open in a "stayed" status. Based on the clerk's action, both Victor and the District Attorney's Office (at different times) took the position that the proper way for the government to re-initiate the charges against Victor was to file new charges that reiterated the old ones.

We see no need to interfere with the clerk's decision — nor would we interfere if the clerk's office had decided to keep the earlier case open. For our purposes, the important thing is to acknowledge the superior court's continuing jurisdiction over the matter, as well as the State's ability to re-invoke that jurisdiction.

If, for administrative purposes, it makes more sense for the clerk's office to close the original case, and to require the government to file a new case if and when the government wishes to re-initiate the previously dismissed charges, this is no problem — so long as the court, the parties, and the clerk's office all understand that this "new" case is, for substantive purposes, a continuation of the closed case.

*The question of whether, after the State re-initiates the previously dismissed criminal charges, but before further litigation ensues, the defendant should have the right to require the State to show that it has re-initiated the charges in good faith*

To reiterate: Victor argues in this appeal that, when criminal charges are dismissed without prejudice under AS 12.47.110(b), the State should not be allowed to re-initiate those charges until the superior court has affirmatively found that the defendant is competent to stand trial — and that the superior court should deny the State any hearing on this question until the State has first offered evidence of a material change

– 34 –                                                              2730

in the defendant's mental status (*i.e.*, a change suggesting that the defendant is competent to stand trial).

Victor acknowledges that the pertinent statutes do not set forth any such rule. Nevertheless, Victor argues that policy considerations require such a rule. He asserts that defendants in his situation will be unfairly prejudiced, and will potentially be subject to governmental harassment, if the State is allowed to re-initiate the previously dismissed criminal charges without first obtaining judicial permission to do so, by proving that the defendant has regained their competency to stand trial.

Specifically, Victor contends that if the State is allowed to re-initiate the charges without first obtaining a judicial ruling that the defendant is competent to stand trial, the State will be able to harass mentally ill defendants by repeatedly filing the same dismissed charges — each time subjecting the defendant to arrest (or at least the service of a summons), as well as subjecting the defendant to potential pre-trial incarceration, anxiety, and "public opprobrium".

We have already explained why we reject the main component of Victor's argument — his contention that the State should be barred from re-initiating the previously dismissed charges until the State first proves that the defendant is competent to stand trial. Instead, we affirm the superior court's ruling that the State can re-initiate the charges without first litigating the defendant's competency to stand trial — and that the litigation of this issue should take place *after* the State re-initiates the charges.

But there is another component to Victor's argument: his contention that Alaska law should provide some procedure to stop prosecutors from repeatedly re-initiating criminal proceedings against a mentally ill defendant when there is no reason to believe that the defendant has become competent to stand trial, or that the defendant could become competent within a reasonable time through authorized treatment.

There is little case law on this point — which is somewhat surprising, given the fact that so many states have competency statutes like Alaska's (*i.e.*, statutes that call for the dismissal of criminal charges "without prejudice" when the defendant is adjudged incompetent to stand trial).

However, one court — the Washington Court of Appeals — has acknowledged the possibility that a prosecuting authority might abuse the government's power to re-initiate the charges. In *State v. Carneh*, 203 P.3d 1073, 1076–77 (Wash. App. 2009), the Washington court held that a defendant was entitled to challenge a prosecutor's decision to re-initiate the previously dismissed charges — and that such a challenge requires the prosecutor to show some reason to believe either (1) that the defendant has already become competent to stand trial, or (2) that mental health treatment as outlined in Washington's competency statutes will lead to the restoration of the defendant's competency to stand trial.

We need not resolve this issue in Victor's case. Even if we assume that, in these circumstances, Alaska law should require the State to offer a reasonable basis for asking the court to re-open the proceedings and re-assess the defendant's competency to stand trial, we conclude that the State's offer of proof in Victor's case satisfied this standard.

We first note that the rationale of Victor's proposed rule is to serve as a check on prosecutors who might otherwise re-initiate criminal charges without any basis for believing that the defendant's mental condition had changed — *i.e.*, re-initiate charges with no reason to think that the defendant would be found competent to stand trial. Thus, the question is not whether the State ultimately succeeds in proving that the defendant is competent to stand trial. Rather, the question is whether the prosecuting authority has a reasonable basis for asking the court to re-open the proceedings and re-assess the defendant's competency to stand trial.

Victor was indicted for stabbing and attempting to kill his parents. Two years after these charges were dismissed and Victor was civilly committed, a paralegal from the District Attorney's Office interviewed Victor's parents and Victor's sister to find out if Victor might be competent to stand trial. Based on these interviews, the paralegal prepared a memorandum, which the prosecutor then filed in the superior court as an offer of proof to support the State's effort to re-initiate the charges against Victor.

According to the paralegal's memorandum, Victor's father said that Victor was "doing okay" — that he recognized his parents and knew who they were; that he knew what day it was, and where he was; and that he was able to engage in conversation (although he would occasionally say bizarre things). Victor's father added that Victor knew that he was on medication — although Victor announced that he was going to stop taking the medication as soon as he "got out of [there]".

Victor's sister (who was interviewed the next day) told the paralegal that she had attended Victor's commitment hearings, and it appeared to her that Victor understood why he was in court. On another occasion in May 2017, Victor's sister participated in a face-to-face visit at the Alaska Psychiatric Institute with Victor and their father — a visit prompted by the fact that it was Victor's birthday. According to Victor's sister, Victor recognized both her and their father, and Victor knew that it was his birthday. Victor's sister also told the paralegal that, during prior court proceedings, Victor's treatment providers mentioned that Victor was being allowed to leave the Institute on passes (with an escort) to see movies.

The observations of Victor's family members, and their accounts of their conversations with Victor, provided a reasonable basis for the prosecutor to ask the superior court to re-assess Victor's competency to stand trial. Even though these family members acknowledged that there were abnormal aspects to Victor's conversation, their reports reasonably suggest that Victor was aware of his circumstances, that he was

– 37 –                                                                2730

oriented in time, and that Victor's treatment providers apparently thought that he could safely leave the psychiatric facility under escort to attend movies.

We also note that, according to Victor's family members, Victor was willingly taking medication as part of his treatment (although he declared that he intended to stop taking the medication as soon as he was allowed to leave the hospital). This fact alone — that Victor was taking medication — suggests that there may have been a significant change in Victor's mental status.

During Victor's original competency hearings — the competency hearings that preceded the dismissal of the charges under AS 12.47.110(b) — the two doctors who evaluated Victor told the superior court that one of the main factors impeding the improvement of Victor's mental status was the fact that he refused to take the medications that were standard treatment for his condition — medications that he had taken on previous occasions, and to which he had responded well. Thus, the fact that Victor was taking medications as part of his civil commitment treatment represented a significant change that would reasonably justify the superior court in re-opening the question of Victor's competence to stand trial.

In sum: Even if Alaska law allowed a defendant in this situation to challenge the State's re-initiation of the charges, by requiring the State to show that it had a good-faith basis for asking the superior court to re-open the question of the defendant's competency to stand trial, we conclude that the State's offer of proof in Victor's case satisfied this standard.

Because the State's offer of proof in Victor's case would satisfy this proposed rule, we need not definitively decide whether Alaska law incorporates such a rule. Nor do we need to decide whether this proposed rule might be satisfied by a lesser offer of proof than the State presented here.

In particular, we need not decide whether the passage of time might itself be a sufficient reason for the superior court to re-assess a defendant's competence to stand trial in cases like Victor's, where the defendant is civilly committed under AS 47.30.715 *et seq.* after the criminal charges are dismissed, and where the defendant has remained in the custody of the Department of Health and Social Services since that time, receiving mental health treatment.

(We note that the legislature has specified that, when criminal charges are dismissed under AS 12.47.110(b), there are many instances where the State has only five years to re-initiate the charges.)

*Our directions to the superior court*

We affirm the superior court's decision to allow the State to re-initiate the previously dismissed criminal charges against Victor.

If Victor still asserts that he is incompetent to stand trial, or if the superior court on its own motion raises the question of Victor's competency to stand trial, the court should initiate proceedings under AS 12.47.100(b) to assess whether Victor is now competent to stand trial.

If the superior court finds that Victor is competent to stand trial, the criminal case against him shall proceed.

However, assuming that Victor has remained in involuntary civil commitment since the time his charges were originally dismissed, if the superior court again finds that Victor is not competent to stand trial, we conclude that the continued commitment, mental health treatment, and re-evaluation procedures set forth in AS 12.47.110 should not apply. Rather, the superior court should again dismiss the charges without prejudice, and Victor should remain in his civil commitment.

*Conclusion*

The decision of the superior court is AFFIRMED. The State can re-initiate the previously dismissed criminal charges against Victor, and the superior court should proceed as we have described in the preceding section of this opinion.

We express no views regarding any other issues that the parties raised in the superior court.